Opinion for the court filed by Circuit Judge PLAGER. Dissenting opinion filed by Circuit Judge O’MALLEY.
PLAGER, Circuit Judge.
This is a patent case calling on us to consider the application of claim preclusion doctrine (res judicata) to a second suit on the same patent based on amended claims resulting from a re-examination of the patent. Plaintiffs-Appellants Senju Pharmaceutical Co., Ltd., Kyorin Pharmaceutical Co., Ltd., and Allergan, Inc. (collectively referred to as “Senju”) filed suit in the United States District Court for the District of Delaware against Defendants-Ap-pellees Apotex Inc. and Apotex Corp. (“Apotex”). Plaintiffs alleged infringement of certain claims of Senju’s reexamined U.S. Patent No. 6,333,045 (the '045 patent).
In response, Apotex filed a motion to dismiss Senju’s lawsuit. Apotex argued that Senju had asserted the same '045 patent against Apotex in a previous infringement action (the “first action”) prior to the '045 patent’s reexamination, and therefore Senju’s subsequent action for infringement of the reexamined '045 patent (the “second action”) was barred by the doctrine of claim preclusion. The district court agreed and granted Apotex’s motion to dismiss. Senju now appeals.
For the reasons that follow, we conclude that Senju’s action for infringement was properly dismissed as barred by claim preclusion, and therefore affirm the district court’s ruling.
I. Background
The '045 patent relates to an ophthalmic solution for eye drops that contains the drug Gatifloxacin. Gatifloxacin is an antimicrobial agent used to kill various types of bacteria. When treating the eye with Gatifloxacin, tear dilution and the outer layer of the eye, the cornea, can prevent the Gatifloxacin from passing into and treating the space between the cornea and the lens of the eye, the aqueous humor. '045 patent col.l 11.27-34.
The '045 patent discloses a pharmaceutical solution that resolves this problem by *1347 combining the Gatifloxacin with disodium edetate (“EDTA”). Id. col.l 11.54-61. EDTA helps expand the intercellular spaces of the cornea, accelerating the passage of Gatifloxacin solution into the eye. Id. The '045 patent as originally issued in December 2001 claimed this combination of Gatifloxacin and EDTA.
Pursuant to the terms of the Hatch-Waxman Act (Pub.L. No. 98-417, 98 Stat. 1585) (“the Act”), Apotex in July 2007 filed an Abbreviated New Drug Application (“ANDA”) (No. 79-084) with the Food and Drug Administration (“FDA”). The application requested approval to manufacture, market, and sell a generic version of the Gatifloxacin ophthalmic solution covered by the '045 patent. Apotex filed the Paragraph IV notice specified by the Act, which places the patent-holder on notice of the application. In response, in November 2007 Senju filed its first action against Apotex, arguing that Apotex’s ANDA and any manufacture of Gatifloxacin ophthalmic solution were acts of infringement of the '045 patent claims 1-3 and 6-9 under the Act.
The district court held a bench trial, and in June 2010 the district court issued findings of fact and conclusions of law under Rule 52(a). At that time the court held that, though the ANDA product infringed claims 1-3, 6, 7, and 9 of the '045 patent, claims 1-3 and 6-9 were invalid as obvious. Senju Pharm. Co. v. Apotex Inc., Ill F.Supp.2d 404, 433 (D.Del.2010). Senju then filed a motion for a new trial or to amend the district court’s judgment and findings, specifically regarding the validity of claim 7.
Over one year passed while the district court addressed this and other issues. In December 2011 the district court again concluded that claim 7 was invalid on the ground of obviousness, and it entered final judgment in the case. Senju Pharm. Co. v. Apotex Inc., 836 F.Supp.2d 196 (D.Del. 2011). In due course, the judgment was affirmed by this court. See 485 Fed.Appx. 433 (Fed.Cir.2012).
In the gap between the district court’s issuance in June 2010 of its findings of fact and conclusions of law under Rule 52(a), and its entry of final judgment in the case in December 2011, the patentee Senju filed, in February 2011, with the U.S. Patent and Trademark Office (“PTO”) a request for reexamination of claims 1-3, 6, 8, and 9 of the '045 patent. The PTO granted reexamination in April 2011. In response to an initial rejection on the ground of obviousness, Senju amended claim 6 to include several additional limitations, including the amount of Gatifloxacin, the amount of EDTA, and the pH. Senju also added new independent claim 12 with similar limitations. In October 2011, the PTO issued a reexamination certificate cancel-ling claims 1-3 and 8-11, and certifying amended claim 6, new independent claim 12, and new dependent claims 13-16 as patentable.
On November 28, 2011, still in the gap prior to the entry of final judgment in the first action, Senju filed a new action against Apotex, seeking a declaratory judgment that Apotex’s manufacture, use, or sale of Gatifloxacin ophthalmic solution infringed claims 6 and 12-16 set forth in the reexamination certificate of the '045 patent.
In January 2012, several weeks after the district court issued its final judgment in the first case, Apotex filed a Rule 12(b)(6) motion to dismiss this second suit, arguing that Senju was precluded from asserting the reexamined '045 patent in the second action under the doctrine of claim preclusion. Apotex argued that Senju’s second action involved the same cause of action that Senju asserted in its first action.
*1348 The district court agreed that Senju had asserted the same cause of action in its second action that it had asserted in its first action. The district court reached this conclusion because “none of the claims [that Senju] added or amended during reexamination were broader than their predecessors,” and the reexamined claims “[did] not create any new cause of action that plaintiffs lacked under the original version of the patent.” Senju Pharm. Co. v. Apotex Inc., 891 F.Supp.2d 656, 662 (D.Del.2012). The district court therefore granted Apotex’s motion to dismiss the second action, rendering final judgment for Apotex. Id. This appeal by the patentee Senju of the dismissal of its suit followed.
We have jurisdiction to decide Senju’s appeal based upon 28 U.S.C. § 1295(a).
II. Discussion
A. Principles of Claim Preclusion
Senju’s appeal requires us to decide whether Senju’s second action is barred by the judicial doctrine now generally known as claim preclusion, earlier known as res judicata and still referred to by that name. “[U]nder the doctrine of res judicata, a judgment ‘on the merits’ in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action.” Lawlor v. Nat’l Screen Serv. Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).
The underlying policies that the doctrine of claim preclusion is designed to further are considerations of efficiency and finality:
The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound “not only as to every matter which was offered and received to sustain or defeat, the claim or demand, but as to any other admissible matter which might have been offered for that purpose.”
C.I.R. v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (quoting Cromwell v. Sac Cnty., 94 U.S. 351, 352, 24 L.Ed. 195 (1876)).
Whether a cause of action is barred by claim preclusion is a question of law that we review without deference. Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1323 (Fed.Cir.2008). We look to the law of the regional circuit in which the district court sits for guidance regarding the principles of claim preclusion; however, whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases, and we therefore apply our own law to that issue. Id. at 1323.
Under Third Circuit law, the home circuit of the district court in this case, claim preclusion principles require: “(1) a final judgment on the merits in a prior suit involving! ](2) the same parties or their [privies]; and (3) a subsequent suit based on the same cause of action.” CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3d Cir.1999). In this case, both parties agree that Senju meets the first two of the three requirements for claim preclusion — that is, Senju’s first action resulted in a final judgment on the merits, and both the first and second actions involved the samé parties.
The parties disagree, however, regarding the third requirement — whether Sen-ju’s first and second actions were based on *1349 the same cause of action. That is the central issue of this appeal.
In applying the policies expressed by the doctrine of claim preclusion, our court has identified certain significant factors to be considered in determining when a cause of action is the same. In Acumed, we followed the approach in the Restatement (Second) of Judgments, which states that a cause of action is defined by the transactional facts from which it arises, and the extent of the factual overlap. 525 F.3d at 1323-24 (citing Restatement (Second) of Judgments § 24 (1982)); see also United States v. Tohono O’Odham Nation, — U.S. -, 131 S.Ct. 1723, 1730, 179 L.Ed.2d 723 (2011) (“The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap.”).
A word of caution. Use of the term “claim” can cause confusion in a patent case involving claim preclusion law. In patent law, a “claim” is a substantive part of the patent document and plays a critically important role in infringement litigation. In civil procedure, and particularly in discussions regarding preclusion law, “claim” is equivalent to “cause of action”— the name “claim preclusion” means preclusion of a cause of action. Whenever possible, other than in referring to the name of the doctrine itself, we will use the longer descriptor “cause of action” when discussing claim preclusion issues; the term “claim” will be used to refer to patent claims. Note, however, that cited texts and judicial opinions may use “claim” and “cause of action” interchangeably.
One of the areas of factual overlap that we consider in a patent case involving claim preclusion is the overlap of the product or process accused in the instant action with the product or process accused in the prior action. If the products or processes are essentially the same, then claim preclusion may apply. Acumed, 525 F.3d at 1324 (stating that “claim preclusion does not apply unless the accused device in the action before the court is ‘essentially the same’ as the accused device in a prior action between the parties that was resolved by a judgment on the merits”) (quoting Foster v. Hallco Mfg. Co., 947 F.2d 469, 479-80 (Fed.Cir.1991)).
We also consider whether the same patents are involved in both suits. Ordinarily, “[e]ach patent asserted raises an independent and distinct cause of action.” Kearns v. Gen. Motors Corp., 94 F.3d 1553, 1555 (Fed.Cir.1996). Claim preclusion will generally apply when a pat-entee seeks to assert the same patent against the same party and the same subject matter. Id. at 1557 (concluding that five patents already asserted against the same party in a previous action were properly dismissed on res judicata grounds); Transclean Corp. v. Jiffy Lube Int’l, Inc., 474 F.3d 1298, 1305 (Fed.Cir.2007) (noting that two cases involved the same cause of action because the cases included the same patent and the same accused devices). How this general rule is to be understood is a key issue in this case.
B. Application of Claim Preclusion Principles
1.
With the preceding legal principles in mind, we turn to the question of factual overlap of Apotex’s first and second actions. The first area of overlap to be considered is whether the products in the first and second actions are “essentially the same.”
In a case such as this, the ‘product’ is the drug described in the ANDA. See Roche Palo Alto LLC v. Apotex, Inc., *1350 531 F.3d 1372, 1380 (Fed.Cir.2008) (reviewing for purposes of claim preclusion whether a first ANDA formulation and a second ANDA formulation were “essentially the same”). The drug described in an ANDA can be viewed as the ‘product’ for claim preclusion purposes even though the accused infringer has not yet made, used, or sold the drug. This legal fiction — the fiction of a ‘product’ that may never have been made, used, or sold in the United States by the alleged infringer — exists because the filing of an ANDA creates a statutory act of infringement. 35 U.S.C. § 271(e)(2)(A); Bayer Schering Pharma AG v. Lupin, Ltd., 676 F.3d 1316, 1318 (Fed.Cir.2012) (“[T]he Hatch-Waxman Act creates a mechanism that allows for prompt judicial determination of whether the ANDA applicant’s drug or method of using the drug infringes a valid patent. The Act makes it an act of infringement to file an ANDA for a drug or for a use of the drug that is claimed in a patent.”).
In its first suit, Senju alleged infringement based on Apotex’s ANDA No. 79-084 and its described Gatifloxacin ophthalmic solution. J.A. 104-05. In its second suit, this case, Senju requested a declaratory judgment of infringement based on Apo-tex’s submission of the same ANDA (No. 79-084). J.A. 124-25. Thus, both actions involve the same Gatifloxacin ophthalmic solution described in ANDA No. 79-084. Because the product in the second action completely overlaps with the product in the first action, there is on that basis no new cause of action.
2.
The more difficult question is whether the same patent, or more precisely the same patent rights, were involved in both suits. Senju argues that the reexamination created a new cause of action because the reexamined patent claims are substantially different from the claims in the original '045 patent. The reexamined claims are different according to Senju because they include the amount of Gati-floxacin or its salt, the pH range, and the amount of EDTA, none of which are included in the original claims.
Senju argues that, under our precedents, the district court was required to consider these as new claims and determine whether the claims as a whole are “substantially the same” in accordance with its understanding of the analysis outlined in Aspex Eyewear, Inc. v. Marchon Eyewear, Inc., 672 F.3d 1335, 1340-42 (Fed.Cir.2012). Senju contends that the district court erred by dismissing its case as barred by claim preclusion without performing this analysis.
Apotex responds that the district court correctly dismissed Senju’s case. According to Apotex, in order for Senju to comply with the statutory requirements for reexamination outlined in 35 U.S.C. § 305, the claim scope of its reexamined '045 claims had to be the same as or narrower than the claim scope of the original '045 claims. Since the claim scope of Senju’s reexamined '045 claims was subsumed by the claim scope of its original claims, Apotex contends that the '045 reexamined patent did not give Senju any additional rights against Apotex’s product that Senju did not already possess in its first lawsuit.
Apotex argues that, under its understanding of Aspex, reexamined claims cannot create a new cause of action that did not exist before. According to Apotex, Senju has engaged in ‘claim splitting,’ and its second suit, the instant suit, is barred by claim preclusion.
On these facts we believe Apotex has the better argument. The argument can be viewed in terms of the cause of action in each suit. Senju’s focus is on the patent *1351 claims in the first suit. Senju’s theory is based on the patent claims that are found in the original patent and the cause of action thereunder; the cause of action in the second suit is based on the new or amended patent claims now in the patent as a result of the re-examination. According to Senju, in order to determine whether a cause of action for infringement is the same in both suits, the differences between the patent claims must be examined to determine whether there are substantial differences, in which case the causes of action are different. Senju argues that the failure of the trial court to have made detailed comparisons requires a remand for that to be done.
Apotex’s response focuses on whether it is the same patented invention, and only derivatively on whether the patent claims asserted in each of the suits are the same or substantially the same. Apotex argues that the narrower claims that resulted from this reexamination, claims that presumably now avoid the prior art that rendered the original claims invalid, are necessarily subsets of those broader claims and therefore their subject matter was included in the original infringement suit. Apotex further argues that Senju’s reliance on cases that involve reissue of a patent is misplaced, since reissue can result in broadened claims under certain circumstances, whereas reexamination does not permit broadening.
Both parties cite to and find support for their positions in language found in our recent case of Aspex Eyewear. The history of that litigation — involving a long series of court battles between the several parties — is convoluted and need not be laid out here.
What is important for our understanding of this circuit’s claim preclusion law is that the opinion in Aspex addressed four separate issues. First was the issue in this case: whether a new cause of action arose as a result of the reexamination that had occurred; second was whether the same product was at issue in both cases (it was not an ANDA case); third was the effect of a settlement agreement between the parties; and fourth were certain claim construction issues the court undertook to address.
In the course of discussing the various issues the opinion made statements that, taken out of their context, could be read as relating to the first issue, that is, whether a new cause of action was created by the reexamination. For purposes of determining our precedents regarding that issue, it is only the first section of the discussion in Aspex to which we must attend.
Regarding claim preclusion, the opinion summarized patentee Aspex’s argument in essentially the same terms as plaintiff Sen-ju has made here:
Aspex’s main argument is that res judi-cata does not bar this action, because Aspex’s claims in this case are based on claims [] amended and added in reexamination. Because those claims were not in existence (at least not in the same form) at the time the prior actions were filed against [the defendants], Aspex argues that the new claims created new causes of action that Aspex could not have pursued in the previous cases. Accordingly, Aspex argues, res judicata does not bar it from pursuing the claims in this case.
Id. at 1340-41.
The court rejected that argument, starting its discussion with:
Amended [] and new claim[s] of the reexamined [] [’] 545 patent did not create new causes of action for Aspex, separate from the causes of action created by the original [] [’] 545 patent. Those two claims were merely new ver *1352 sions of claims that were part of the [ ] [’] 545 patent prior to its reexamination.
Id. at 1341.
The court in its conclusion of the discussion of this issue said,
[consistent with that rule [the rule that new claims that emerge from reexamination must not be broader than the original claims], the claims on which As-pex relies are not broader than their predecessor; they therefore did not create a new legal right against infringement that Aspex lacked under the original version of the patent.
Id. at 1342.
In between the start and the conclusion, the Aspex court pointed out two reasons why the patentee’s reliance on cases involving reissued patents was in error. Unlike reissue, reexamination does not result in the surrender of the original patent and the issuance of a new patent. Furthermore, the court noted, the two claims on which Aspex relied are different only in the additional limiting characteristics that were added, and thus were not “materially different” from the original claim, and did not create a new cause of action that was not previously available. Id.
In this case we reach the same conclusion that the Aspex court did— claims that emerge from reexamination do not in and of themselves create a new cause of action that did not exist before. We reach this conclusion because a so-called “reexamined patent” is the original patent; it has just been examined another time as indicated in its reexamination cer-tifícate.[1] Reexamination does not involve the filing of a new patent application nor the issuance of a new patent.
The reexamination process does permit some amendment of the patent and its claims, but any amendment that occurs during reexamination is statutorily constrained. For example, amendments to the disclosure cannot introduce new matter. 35 U.S.C. § 132(a) (“No amendment shall introduce new matter into the disclosure of the invention”); 35 U.S.C. § 112, ¶ 1 (2011); Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed.Cir.2010) (stating that the disclosure must “ ‘clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed’ ”) (citing Vas-Cath Inc. v. Ma-hurkar, 935 F.2d 1555, 1563 (Fed.Cir. 1991)).
Any change to the original patent is further constrained by 35 U.S.C. § 305, which states that “[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter.” We have strictly interpreted § 305 to prohibit any broadening amendments. The reexamined claim cannot be broader in any respect, even if it is narrowed in other respects. Predicate Logic, Inc. v. Distributive Software, Inc., 544 F.3d 1298, 1303 (Fed.Cir.2008). Therefore, while reexamination can make certain changes in the patent, such changes are strictly circumscribed by the original patent’s disclosure and claim scope.
As a result, a reexamined patent claim cannot contain within its scope any product or process which would not have infringed the original claims. Id. Put another way, because the patent right is a right to ex- *1353 elude whose outer boundary is defined by the scope of the patent’s claims, as explained in Aspex, reexamination does not provide larger claim scope to a patentee than the patentee had under the original patent claims.
The court in Aspex held that the original patent claims in that case and the issued reexamination claims were not materially different. This led Senju to argue that in every case it is necessary to make that factual determination in detail. But that is an unwarranted extension of the point. Both in Aspex and in this case the district court could readily ascertain that the reexamined claims were essentially the original claims with the addition of limitations designed to avoid prior art. In Aspex the appellate court noted that fact; in our case the trial court noted that the amended and new claims were essentially the original claims with limiting words added.[2]
Whether it is possible that a reexamination could ever result in the issuance of new patent claims that were so materially different from the original patent claims as to create a new cause of action, but at the same time were sufficiently narrow so as not to violate the rule against reexamined claims being broader than the original claims, is a question about which we need not opine — that is not the case before us. We hold that, in the absence of a clear showing that such a material difference in fact exists in a disputed patentable reexamination claim, it can be assumed that the reexamined claims will be a subset of the original claims and that no new cause of action will be created. This applies whether the judgment in the original suit was based on invalidity of the claims or simply on non-infringement.
We conclude, as the court did in Aspex, that the claims in this case that emerged from reexamination do not create a new cause of action that did not exist before. Senju cannot sue Apotex on the same patent twice.
At its core, what Senju seeks is a do-over. Having lost its suit, Senju seeks to use reexamination to obtain a second bite at the apple, to assert its patent against the same party, Apotex, and the same product, the Gatifloxacin ophthalmic solution described in ANDA No. 79-084. But that is exactly what claim preclusion was designed to prevent. Claim preclusion “applies to repetitious suits involving the same cause of action.” C.I.R., 383 U.S. at 597, 68 S.Ct. 715. Claim preclusion exists to “encourage[] reliance on judicial decisions, bar[ ] vexatious litigation, and free[ ] the courts to resolve other disputes.” Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767.
Senju raises several additional arguments about purported differences between its first and second suits based on issues of proof under the new patent claims. We have examined these additional arguments and find them without merit, for the accused products are the same in both actions. Although Senju criticizes the district court’s opinion, in any event that argument is immaterial since “[w]e sit to review judgments, not opinions.” Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1540 (Fed.Cir.1983).
Senju concedes that all of the elements of claim preclusion are met save the last: whether its first and second suits were *1354 based on the same cause of action. Because we conclude that the facts of Senju’s first and second actions overlap and the reexamination of the '045 patent did not create a new cause of action, the resolution of this case is straightforward: Senju’s suit against Apotex is barred on the principles of claim preclusion. For these reasons, we affirm the district court’s dismissal of Senju’s suit.
III. CONCLUSION
The judgment of the district court is affirmed.
AFFIRMED

. After reexamination, the PTO issues a reexamination certificate that memorializes the results of the reexamination process. The reexamination certificate identifies the patent and "confirm[s] any claim of the patent determined to be patentable, and incorporates] in the patent any proposed amended or new claim determined to be patentable.” 35 U.S.C. § 307(a).

. "Claim 6 was amended to add limiting words. Claim 12 is similar to canceled claim 1, except that it adds the gatifloxacin concentration, EDTA concentration, and pH characteristics. Claims 13 through 15 are dependent on claim 12, and claim 16 is dependent on claim 15. Consequently, claims 6 and 12-16 are all narrower in scope than the original claims.” Senju Pharma. Co. v. Apotex Inc., 891 F.Supp.2d 656, 662 (D.Del.2012).