# United States Court of Appeals for the Federal Circuit

---

**SIMPLEAIR, INC.,**
*Plaintiff-Appellant*

v.

**GOOGLE LLC,**
*Defendant-Appellee*

---

2016-2738

---

Appeal from the United States District Court for the Eastern District of Texas in No. 2:16-cv-00488-JRG, Judge J. Rodney Gilstrap.

---

Decided: March 12, 2018

---

JOHN JEFFREY EICHMANN, Dovel & Luner, LLP, Santa Monica, CA, argued for plaintiff-appellant. Also represented by GREGORY S. DOVEL, SIMON FRANZINI.

CHARLES KRAMER VERHOEVEN, Quinn Emanuel Urquhart & Sullivan, LLP, San Francisco, CA, argued for defendant-appellee. Also represented by CARL G. ANDERSON, JORDAN ROSS JAFFE; MILES DAVENPORT FREEMAN, Los Angeles, CA.

---

Before LOURIE, REYNA, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

SimpleAir, Inc. ("SimpleAir") appeals from the order of the United States District Court for the Eastern District of Texas dismissing SimpleAir's complaint under Rule 12(b)(6) as barred by claim preclusion and the *Kessler* doctrine. *SimpleAir, Inc. v. Google Inc.*, 204 F. Supp. 3d 908, 915 (E.D. Tex. 2016) ("*SimpleAir IV*"). Because the district court erred by presuming that terminally-disclaimed continuation patents are patentably indistinct variations of their parent patents without analyzing the scope of the patent claims, we vacate the district court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

SimpleAir initiated a series of patent infringement lawsuits over six years ago against Google's Cloud Messaging and Cloud to Device Messaging Services (collectively, "GCM"). Thus far, the litigation has resulted in three judgments of noninfringement in Google's favor. Each case has involved one or more patents from a family of patents owned by SimpleAir directed to push notification technology. The question in this case is whether claim preclusion or the *Kessler* doctrine bars SimpleAir's fourth suit asserting additional terminally-disclaimed continuation patents from this family against Google and its GCM services.

The parent patent of this family is U.S. Patent 6,021,433 (the "'433 patent"), which was filed January 24, 1997, claimed priority from a provisional application filed January 26, 1996, issued February 1, 2000, and expired January 24, 2017. The rest of SimpleAir's patents asserted against GCM are children of the '433 patent linked by continuation applications (collectively, the "child patents"). The child patents all share a common specification with the '433 patent and also claim priority from the 1996 provisional application. During prosecution, Sim-

pleAir filed terminal disclaimers for each child patent to overcome obviousness-type double patenting rejections at the U.S. Patent and Trademark Office ("PTO"). The terminal disclaimers require the child patents to expire on the same day as the '433 patent, *see* 35 U.S.C. § 253(b), and also require the child patents to be "commonly owned with the application or patent which formed the basis" for the obviousness-type double patenting rejection, *see* 37 C.F.R. § 1.321(c)(3). The child patents issued over the course of eight years between 2006 and 2014.

SimpleAir filed its first lawsuit against Google in 2011, asserting the '433 patent and a continuation, U.S. Patent 7,035,914 (the "'914 patent"). SimpleAir dismissed its action based on the '433 patent with prejudice, but the parties proceeded to trial on the '914 patent. A jury found the '914 patent not invalid and infringed by Google's GCM services, *see SimpleAir, Inc. v. Google Inc.*, 70 F. Supp. 3d 747, 752 (E.D. Tex. 2014), but on appeal we reversed the district court's claim construction ruling, vacated the jury verdict, and remanded with instructions to enter judgment of noninfringement, *SimpleAir Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 421 (Fed. Cir. 2016) ("*SimpleAir I*").

While *SimpleAir I* was proceeding, SimpleAir filed two more complaints asserting that GCM infringed two other continuations, U.S. Patents 8,572,279 (the "'279 patent") and 8,601,154 (the "'154 patent"). The district court consolidated the actions, and SimpleAir dismissed its action based on the '154 patent with prejudice. The parties proceeded to trial on the '279 patent, the jury returned a verdict of noninfringement, and the district court entered final judgment in accordance with the verdict, *SimpleAir, Inc. v. Google Inc.*, No. 2:14-cv-11 (E.D. Tex. Nov. 4, 2015) ("*SimpleAir II/III*").

The present case arises from SimpleAir's fourth complaint asserting infringement by GCM, this time of U.S.

Patents 8,639,838 (the "'838 patent") and 8,656,048 (the "'048 patent"). Like the '914, '154, and '279 patents, the '838 and '048 patents are linked with the '433 patent by continuation applications and are terminally-disclaimed to it.

The district court dismissed both complaints under Rule 12(b)(6) as barred by claim preclusion and the *Kessler* doctrine. *SimpleAir IV*, 204 F. Supp. 3d at 915. The only element of claim preclusion in dispute was whether the present case and the previous cases involved the same claim or cause of action. The district court held that they did because the '838 and '048 patents shared the same title and specification with the previously adjudicated continuation patents, and the filing of a terminal disclaimer to overcome the PTO's obviousness-type double patenting rejections indicated that the PTO believed the content of the patents in suit to be patentably indistinct from the earlier patents. *Id.* at 913. That led the district court to conclude that the underlying invention claimed by the various child patents was the same. *Id.* In its order, the district court never compared the claims of the '838 and '048 patents to those of the previously adjudicated patents. *Id.*

Furthermore, the district court found that there was no dispute that SimpleAir could have included the '838 and '048 patents in *SimpleAir II/III*, as the '838 patent issued before, and the '048 patent issued only a few days after, SimpleAir filed its first amended complaint in that case. *Id.* at 914. By failing to amend its complaint to include these two patents, and instead filing a new suit just after our decision in *SimpleAir I*, the district court found that SimpleAir made a "strategic decision." *Id.*

The district court also observed that the PTO's regulation requiring common ownership of terminally-disclaimed continuation patents and their parent patents functioned to prevent successive lawsuits brought by

multiple assignees, *id.* at 913 (citing *In re Hubbell*, 709 F.3d 1140, 1145 (Fed. Cir. 2013)), but did not prevent successive suits by a single patentee. The district court reasoned that traditional claim preclusion principles could rectify this apparent inconsistency. *Id.* at 914.

Additionally, the district court held that the *Kessler* doctrine barred SimpleAir's assertion of the '838 and '048 patents against Google's provision of GCM services occurring after the judgment in *SimpleAir II/III*, although claim preclusion did not. *Id.*

SimpleAir timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

SimpleAir principally argues on appeal that claim preclusion only applies when the earlier and later cases involve the same cause of action, and "[e]ach patent asserted raises an independent and distinct cause of action." *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1555 (Fed. Cir. 1996). Thus, SimpleAir asserts that the district court erred in barring assertion of the '838 and '048 patents under claim preclusion, as those patents were never litigated in SimpleAir's prior actions against Google's GCM services. SimpleAir contends that a common specification and a terminal disclaimer are not sufficient to presume that distinct patents cover essentially the same invention.

Google responds that, notwithstanding the fact that the '838 and '048 patents were not previously litigated, claim preclusion still bars SimpleAir's latest action. According to Google, *SimpleAir IV* involves the same accused GCM services, as well as materially similar continuation patents sharing a common specification with and terminal disclaimers to a common parent patent, as in *SimpleAir I–III*. This factual overlap, Google argues, confirms that the '838 and '048 patents are part of the

same cause of action already decided in Google's favor, regardless of the precise claim language. Consequently, Google contends that the district court properly applied claim preclusion to foreclose SimpleAir's suit.

## I.

Under the doctrine of claim preclusion, "a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955). Unlike the related doctrine of issue preclusion, claim preclusion forecloses successive litigation of the same cause of action whether or not relitigation of the cause of action involves the same issues as the earlier suit. *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001).[1]

In assessing claim preclusion, we apply the law of the regional circuit in which the district court sits, here the Fifth Circuit. *See, e.g., Senju*, 746 F.3d at 1348. The test for claim preclusion in the Fifth Circuit has four elements: (1) the parties in the later action are identical to, or in privity with, the parties in the earlier action; (2) the judgment in the earlier case was rendered by a court with proper jurisdiction; (3) there has been a final judgment on the merits; and (4) the earlier case and later case involve the same cause of action. *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). The only disputed element

---

[1] When analyzing claim preclusion, courts often use "claim" and "cause of action" interchangeably. *See Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014). For clarity, "other than in referring to the name of the doctrine itself, we will use the longer descriptor 'cause of action' when discussing claim preclusion issues; the term 'claim' will be used to refer to patent claims." *Id.*

in this appeal is whether *SimpleAir IV* involves the same cause of action as the prior cases. *SimpleAir IV*, 204 F. Supp. 3d at 912; Appellant Br. 9–14; Appellee Br. 15.

"[W]hether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases, and we therefore apply our own law to that issue." *Senju*, 746 F.3d at 1348. Our cases generally follow the Restatement (Second) of Judgments (1982) (hereinafter Restatement), which defines a cause of action based on the transactional facts from which it arises. *Senju*, 746 F.3d at 1349; *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323–24 (Fed. Cir. 2008) (citing Restatement § 24); *see also Houston Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016) (also applying the Restatement's transactional test). In a patent suit, essential transactional facts include both the asserted patents and the accused activity. *Senju*, 746 F.3d at 1349; *Acumed*, 525 F.3d at 1324. If the overlap between the transactional facts of the suits is substantial, the later action should ordinarily be precluded. *See* Restatement § 24 cmt. b. However, what facts make up a transaction in a given case "is not capable of a mathematically precise definition." *Id.*

Because whether a cause of action is barred by claim preclusion is a question of law, we review *de novo* the district court's dismissal. *Acumed*, 525 F.3d at 1323; *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

As an initial matter, we agree with Google that claim preclusion is not foreclosed because SimpleAir asserted patents in this case that were not before the district court in *SimpleAir I–III*. "What factual grouping constitutes a 'transaction' . . . [is] to be determined pragmatically," Restatement § 24(2), not through a rigid rule that would prevent courts from evaluating the extent of factual

overlap between cases. We do not interpret the general statement in *Kearns*, 94 F.3d at 1555, to be in conflict with general claim preclusion principles, particularly as *Kearns* relied on procedural inadequacies in the earlier case, *id.* at 1556, to conclude that claim preclusion did not apply. While "[o]rdinarily" different patents will raise different causes of action, *Senju*, 746 F.3d at 1349 (citing *Kearns*, 94 F.3d at 1555), that factor is not dispositive and does not substitute for the transactional approach consistently followed by this court, *see, e.g., id.* at 1348–49; *Acumed*, 525 F.3d at 1323–24.

However, although we agree with Google that there is substantial overlap between *SimpleAir IV* and *SimpleAir I–III*, as the asserted patents all share a common specification and terminal disclaimer to a common parent, ultimately we agree with SimpleAir that the overlap discussed in the record before us is not sufficient to sustain the district court's holding of claim preclusion.

We begin with the maxim that "it is the claims of the patent which define the invention." *Altoona Publix Theatres, Inc. v. Am. Tri-Ergon Corp.*, 294 U.S. 477, 487 (1935) (collecting cases). While the district court concluded that "the underlying invention is the same" between the patents asserted throughout *SimpleAir I–IV*, it never analyzed the claims of any patent in making that conclusion. *SimpleAir IV*, 204 F. Supp. 3d at 913. For its part, Google argues that while comparison of the patent claims involved in the earlier and later suits may be necessary in issue preclusion, such comparison is not necessary in evaluating claim preclusion. Google primarily relies on *Senju* for this proposition. *See* 746 F.3d at 1353.

In *Senju*, the patentee in the first case alleged patent infringement against a defendant, and the district court held the claims invalid as obvious. *Id.* at 1347. Afterwards, the patentee amended and added new claims to the patent in a reexamination proceeding, and then filed a

second action for infringement against the same party. *Id.* The district court held the patentee's second action claim-precluded by the earlier action because it raised the same cause of action as the first case, as none of the claims emerging from reexamination were broader than their predecessors. *Id.* at 1348.

On appeal we affirmed, holding that "claims that emerge from reexamination do not in and of themselves create a new cause of action that did not exist before." *Id.* at 1352; *see Aspex Eyewear Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1341 (Fed. Cir. 2012). This conclusion rested in part on 35 U.S.C. § 305, which states "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter." Given that statutory limitation, we rejected the patentee's argument that it was necessary in every case to make a detailed comparison of the claims. *Senju*, 746 F.3d at 1352–53.

Unlike *Senju*, here the district court did not make any determination of the scope of the '838 and '048 claims in comparison with the patents litigated in *SimpleAir I–III*. Furthermore, there is no prohibition on broadening claims in continuation patents subject to a terminal disclaimer.[2] So unlike the case of reexamined claims, claims of terminally-disclaimed continuation patents could "provide larger claim scope to a patentee than the patentee had under" the parent patent. *Senju*, 746 F.3d at 1353. In this sense, continuation patents are more similar to reissue patents, which we have distinguished from reexaminations in the claim preclusion context. *See Aspex*, 672 F.3d at 1341; 35 U.S.C. § 251(d) ("No reissued patent

---

[2] Of course, the continuation cannot add new matter. *See, e.g.*, *Applied Materials, Inc. v. Advanced Semiconductor Materials, Inc.*, 98 F.3d 1563, 1579–80 (Fed. Cir. 1996).

shall be granted enlarging the scope of the claims of the original patent *unless applied for within two years* from the grant of the original patent." (emphasis added)). Here, given the substantively different requirements of continuation patents as compared to reexaminations, the district court erred in holding SimpleAir's latest suit to be claim-precluded without any comparison of the asserted claims to the claims involved in *SimpleAir I–III*.

As the accused activity between two cases must be "essentially the same" for claim preclusion to apply, *see Acumed*, 525 F.3d at 1324, we adopt that standard for comparison of the claims between asserted patents as well. Thus, where different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same. In applying that standard to the particular context here, we conclude that claims which are patentably indistinct are essentially the same.

Even without any direct analysis of the claims, Google argues this standard was met here. According to Google, "the Examiner's obviousness-type rejection and SimpleAir's choice to file a terminal disclaimer . . . provided sufficient evidence that SimpleAir's terminally-disclaimed continuation patent claims are not patentably distinct" from the previously adjudicated claims. Appellant Br. 37.

We disagree with Google that filing a terminal disclaimer settles the issue of claim preclusion here. As the district court correctly observed, the doctrine of obviousness-type double patenting "was developed to 'prevent a patent owner from extending his exclusive right to an invention through claims in a later-filed patent that are not patentably distinct from the earlier filed patent,'" *SimpleAir IV*, 204 F. Supp. 3d at 913 (quoting *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009)). And filing a terminal disclaimer may

obviate an obviousness-type double patenting rejection, 37 C.F.R. § 1.321(c), as it did for the patents at issue, in exchange for limiting the patent term and alienability of the resulting continuation patent, *see* 37 C.F.R. §§ 1.321(d)(3), 1.321(c)(3). But our cases foreclose the inference that filing a terminal disclaimer functions as an admission regarding the patentability of the resulting claims. *See Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1385 (Fed. Cir. 2007) ("A terminal disclaimer is simply not an admission that a later-filed invention is obvious."); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 941 (Fed. Cir. 1992) (rejecting argument that patent applicant admitted to obviousness-type double patenting by filing terminal disclaimer); *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991) ("[T]he filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection."). As a panel, we lack the authority to deviate from this precedent, and the district court erred by holding otherwise.

Although a terminal disclaimer does not conclusively show that a child patent involves the same cause of action as its parent, the terminal disclaimer is still very relevant to that inquiry. By filing a terminal disclaimer, a patent applicant waives potentially valuable rights. We do not lightly presume that patent applicants forfeit the right to alienate their patents, and in certain cases years of exclusivity, as a mere procedural expedient. Rather, as occurred here, applicants typically file terminal disclaimers to overcome obviousness-type double patenting rejections. In construing the scope of claims, we give considerable weight to statements made by patent applicants during prosecution in order to overcome examiner rejections. *See, e.g.*, *Alpex Comput. Corp. v. Nintendo Co. Ltd.*, 102 F.3d 1214, 1220 (Fed. Cir. 1996). We see no reason to treat terminal disclaimers any differently.

Thus, a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant, thought the claims in the continuation lacked a patentable distinction over the parent. But as our precedent indicates, that strong clue does not give rise to a presumption that a patent subject to a terminal disclaimer is patentably indistinct from its parent patents. It follows that a court may not presume that assertions of a parent patent and a terminally-disclaimed continuation patent against the same product constitute the same cause of action. Rather, the claim preclusion analysis requires comparing the patents' claims along with other relevant transactional facts.

While the district court did not specifically consider the claims, SimpleAir argues on appeal that the claims in the '838 and '048 patents are materially different from those claims previously litigated in *SimpleAir I-III*. Google argues to the contrary, albeit only in discussing issue preclusion. The primary difference between the claims of the '838 and '048 patents and those in the prior litigations is the language "whether the selected remote computing devices are online or offline *to the information providers of the received data*," '048 patent col. 32 ll. 36–38; '838 patent col. 32 ll. 39–41 (emphasis added), as compared to "whether said computing devices are online or offline *from a data channel associated with each device*." '914 patent col. 33 ll. 34–35 (emphasis added). We held in *SimpleAir I* that Google did not infringe as a matter of law because its GCM system "sends messages over the same communication path as other Internet data—it does not use a separate path." 820 F.3d at 431. SimpleAir has not presented persuasive argument why "online or offline to the information providers" is different from "online or offline from a data channel." Although SimpleAir argues that the '838 and '048 patents disclose a service that would notify the user's computer of newly available information and events of interest when the

user's computer *is* connected to the Internet but *not* connected to the particular information provider, based on the parties' limited discussion of the claims on appeal, we do not see how this is a fundamentally different invention from those patents asserted in the previous suits. The '838 and '048 patents still rely on the same previously asserted communications architecture with two separate pathways for online and offline communications.

Given these similarities between the '838 and '048 patent claims and those of the previously adjudicated patents, we leave to the district court's discretion on remand whether formal claim construction is necessary to resolve whether the '838 and '048 claims are essentially the same as, *i.e.*, patentably indistinct from, those in the previously adjudicated parent patents.

SimpleAir also argues that claim preclusion "does not bar a cause of action that was never actually asserted in the prior case," even if the cause of action could have been added to the prior case. Appellant Br. 17–18; *see Aspex*, 672 F.3d at 1344–45 (quoting *Gillig v. Nike*, 602 F.3d 1354, 1363 (Fed. Cir. 2010)). Because the '838 and '048 patents issued after SimpleAir filed its complaints in *SimpleAir II* and *SimpleAir III*, SimpleAir contends that claim preclusion cannot bar SimpleAir from initiating a new suit based on those patents.

SimpleAir's argument rests on the premise that the '838 and '048 child patents constitute causes of action separate from an earlier adjudication of parent patents. But as discussed above, assertion of each new continuation patent does not necessarily create a new cause of action. That is in accordance with *Aspex*, where we held that new claims emerging from reexamination did not create new causes of action and were therefore claim-precluded, 672 F.3d at 1341, even though the reexamined claims did not issue until after the first suit had ended, *id.* at 1339. Thus, whether the '838 and '048 continuation

patents present the same cause of action as previously litigated depends on the scope of their claims, not on their dates of issuance.

Claim preclusion implicates both "the weighty policies of judicial economy and fairness to parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). It "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979). However, claim preclusion "shields the fraud and the cheat as well as the honest person," and "therefore is to be invoked only after careful inquiry." *Id.* at 132.

The district court made a number of findings that implicate the underlying policies of claim preclusion. It found that SimpleAir engaged in strategic delay in bringing its fourth suit against Google, *SimpleAir IV*, 204 F. Supp. 3d at 914, and that SimpleAir previously assured the jury in *SimpleAir I*, over four years ago, that it would not engage in duplicative and burdensome litigation, *id.* at 915. Google also alleges on appeal that SimpleAir coordinated its continuation patent prosecution and litigation tactics to keep Google perpetually in court. *See* Appellee Br. 55.

While these policy considerations may be persuasive, it is our duty to faithfully apply our precedent, and that precedent is inconsistent with the critical premise of the district court that filing a terminal disclaimer during prosecution of a continuation patent implies that the continuation patent is patentably indistinct from its parent. Our holding in this case is limited to that error: a district court cannot presume that a terminally-disclaimed continuation patent presents the same cause of action as a parent patent based on the filing of the terminal disclaimer alone. To the extent that the district court finds that SimpleAir has engaged in improper

litigation tactics, the court surely has other means for dealing with that.

## II.

Google alternatively argues that even if claim preclusion does not apply, SimpleAir's assertion of the '838 and '048 patents is precluded by the *Kessler* doctrine. We disagree.

We have held that claim preclusion does not bar a party from asserting infringement based on activity occurring after the judgment in the earlier suit. *See Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1054 (Fed. Cir. 2014); *see also Aspex*, 672 F.3d at 1343. *But see Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 472–73, 479–80 (Fed. Cir. 1991) (indicating that products sold after an earlier judgment could trigger claim preclusion if they were "essentially the same" as those in the earlier suit). However, the so-called *Kessler* doctrine,[3] named after *Kessler v. Eldred*, 206 U.S. 285 (1907), does preclude assertions of a patent against even post-judgment activity if the earlier judgment held that "essentially the same" accused activity did not infringe that patent. *See Brain Life*, 746 F.3d at 1057–58. *Kessler*'s rationale is that the accused activity, held in the earlier case not to infringe the patent, acquires a limited trade right to continue being practiced "without molestation" by the patentee or its privies. *Kessler*, 206 U.S. at 285, 290; *Brain Life*, 746 F.3d at 1058. This doctrine protects "an adjudged *non-infringer*" from "repeated harassment for continuing its

---

[3] It is strange that we now refer to a "*Kessler* doctrine." There are few doctrines in patent law; not even the venerable doctrine of equivalents is called the "*Graver Tank* doctrine." So, for *Kessler* to be elevated to the status of a doctrine gives it rare standing. Nonetheless, we will not buck the rising tide.

business as usual post-final judgment." *Id.* at 1056 (emphasis in original).

In *Brain Life*, we held assertion of the same set of patent claims barred by both claim preclusion, *id.* at 1053, and the *Kessler* doctrine, *id.* at 1058–59. We relied on the *Kessler* doctrine only to bar assertion of the claims at issue against essentially the same products made or sold after the judgment of noninfringement in the earlier case, *id.* at 1058, *i.e.*, products that claim preclusion could not reach because of their *timing*, *id.* at 1054. In contrast, we have not applied the *Kessler* doctrine to bar a broader *set of rights* than would be barred by claim preclusion. Nor have we applied the *Kessler* doctrine to activity predating the earlier judgment, as Google advocates here, Appellee Br. 53. In effect, Google asks us to subsume claim preclusion within a more expansive, *sui generis Kessler* doctrine. But the *Kessler* doctrine just fills a particular temporal gap between preclusion doctrines, *see Brain Life*, 746 F.3d at 1056; it does not displace them.

However, as in the claim preclusion context, we also disagree with SimpleAir's argument that the *Kessler* doctrine cannot in any case bar assertion of terminally-disclaimed continuation patents when only parent patents have previously been held noninfringing. If, on remand, the district court determines that the claims of the '838 and '048 patents are patentably indistinct from those previously adjudicated, and are therefore claim-precluded with respect to pre-judgment GCM services, then the *Kessler* doctrine would also bar SimpleAir's assertions of those patents against Google's provision of essentially the same GCM services post-judgment.

## III.

Google also argues that issue preclusion bars SimpleAir's assertion of the '838 and '048 patents. Google did not raise issue preclusion before the district court, and accordingly the district court never addressed it. General-

ly, "those issues not raised below at the district court cannot be heard for the first time on appeal." *Conoco, Inc. v. Energy & Envtl. Int'l.*, 460 F.3d 1349, 1358 (Fed. Cir. 2006). Google has not presented any circumstances that warrant deviating from normal rules of waiver. We thus conclude that Google waived its issue preclusion argument.

## CONCLUSION

For the foregoing reasons, we vacate the district court's order and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**