This Opinion is a
Precedent of the TTAB

Mailed: August 1, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

―――

Trademark Trial and Appeal Board

―――

*Flame & Wax, Inc.*

*v.*

*Laguna Candles, LLC*

―――――

Cancellation No. 92072343

―――――

Eric Goodman of Goodman Mooney LLP
    for Flame & Wax, Inc.

Amy E. Burke, Esq.
      For Laguna Candles, LLC.

―――

Before Zervas, Shaw and Lynch,
    Administrative Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:

On September 23, 2014, Registration No. 4609702 (the "'702 registration") for the standard character mark LAGUNA CANDLES issued on the Principal Register to Laguna Candles, LLC ("Respondent") for "aromatherapy fragrance candles; candles; scented candles" in International Class 4. The '702 registration, which matured from an application filed on February 25, 2014 under Section 1(a) of the Trademark Act,

15 U.S.C. § 1051(a), claims acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f). The registration claims first use and first use in commerce of the mark at least as early as October 17, 2003 and contains a disclaimer of the term "CANDLES."

Flame & Wax, Inc. ("Petitioner") filed a Petition to Cancel[1] the '702 registration, alleging, inter alia, that:

● Petitioner is a well-known manufacturer of luxury candles and other home fragrance products (¶ 1);

● The parties are competitors in the same field or industry (¶ 10);

● In an October 2, 2013, decision, the Board sustained Petitioner's opposition to registration of Application Serial No. 85137006 ("the Prior Application") for the mark "Laguna Candles" for "Candles and candle fragrances" in Opposition No. 91200223 ("the Prior Opposition") on the grounds of mere descriptiveness, geographic descriptiveness and genericness (¶¶ 12, 20, 21);[2] and

● In the Prior Opposition, the Board found that the primary significance of LAGUNA CANDLES is "Laguna," a term commonly used to refer to Laguna Beach, California. (¶ 35).

---

[1] 1 TTABVUE. Citations in this opinion refer to TTABVUE, the Board's online docketing system. *Turdin v. Tribolite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014). Specifically, the number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page(s) of the docket entry where the cited materials appear.

[2] The Board's opinion in the Prior Opposition states that the Prior Opposition is based on a claim that the mark is primarily geographically descriptive under Section 2(e)(2) of the Trademark Act of 1946, 15 U.S.C. § 1052(e)(2), but makes no mention of claims of mere descriptiveness or genericness. 19 TTABVUE 279.

The Petition to Cancel raises the following claims:[3]

(i) "[t]he Board's decision in the [Prior] Opposition Proceeding that the term 'Laguna Candles' cannot be registered because it is primarily geographically descriptive is res judicata" (¶ 33);[4]

(ii) LAGUNA CANDLES "consists of matter which, when applied to [Respondent's] goods, is merely descriptive, primarily geographically descriptive, and/or generic ["when viewed as a whole, the Subject Mark is simply a sum of its generic parts, 'Laguna' and 'candles,'" (¶ 38)] in violation of 15 U.S.C. § 1052(e)" (¶ 34); and

(iii) fraud due to Respondent's representation that it was entitled to seek and obtain registration of the LAGUNA CANDLES mark when it filed its application knowing that the Board already ruled that the LAGUNA CANDLES mark was not subject to registration because it was primarily geographically descriptive. (¶¶ 39-41).[5]

---

[3] Petitioner submitted exhibits with its petition to cancel. With the exception of a registration or registrations owned by the plaintiff on which it relies for its claims (an exception not applicable here), exhibits to pleadings are not evidence and will not be considered unless they are properly introduced in evidence. Trademark Rule 2.122(c), 37 C.F.R. § 2.122(c). We have not considered the exhibits submitted with the Petition to Cancel.

[4] The ESTTA generated filing form for the Petition to Cancel states, "[c]ontinued registration [is] barred by claim or issue preclusion." 1 TTABVUE 1. "[T]he ESTTA generated filing form ... is considered part of the plaintiff's initial pleading." *Schott AG v. Scott*, 88 USPQ2d 1862, 1863 n.3 (TTAB 2008); *see also PPG Indus. Inc. v. Guardian Indus. Corp.*, 73 USPQ2d 1926, 1928 (TTAB 2005) ("Since ESTTA's inception, the Board has viewed the ESTTA filing form and any attachments thereto as comprising a single document or paper being filed with the Board.").

[5] 1 TTABVUE 7-8.

In addition, Petitioner's ESTTA cover sheet accompanying the Petition to Cancel identifies as a claim "[t]he mark is not inherently distinctive and has not acquired distinctiveness."[6]

At briefing, Petitioner discussed only its claims of res judicata, geographic descriptiveness and lack of acquired distinctiveness, and fraud. Its other claims are therefore deemed waived. *See Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1753 n.6 (TTAB 2013), *aff'd mem.*, 565 F. App'x 900 (Fed. Cir. 2014); *Swatch AG (Swatch SA) (Swatch Ltd.) v. M.Z. Berger & Co.*, 108 USPQ2d 1463, 1465 n.3 (TTAB 2013) (opposer's pleaded claims not argued in its brief deemed waived), *aff'd*, 787 F.3d 1368, 114 USPQ2d 1892 (Fed. Cir. 2015).

Respondent filed an answer to the Petition to Cancel in which it denied Petitioner's salient allegations and raised laches, estoppel, acquiescence and unclean hands as affirmative defenses.[7] Respondent also alleged that its mark has acquired secondary meaning "through extensive use, promotion, and recognition in the marketplace." (Affirmative Defenses, ¶ 1).[8] Because Respondent did not pursue its affirmative defenses of estoppel, acquiescence and unclean hands in its brief, it waived these affirmative defenses. *See Harry Winston, Inc. v. Bruce Winston Gem Corp.*, 111 USPQ2d 1419, 1422 (TTAB 2014) (pleaded affirmative defenses not pursued in the brief considered waived); *Research in Motion Ltd. v. Defining Presence*

---

[6] 1 TTABVUE 1. Lack of acquired distinctiveness under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), is a valid claim.

[7] 12 TTABVUE 7.

[8] *Id.*

*Mktg. Grp. Inc.*, 102 USPQ2d 1187, 1189-90 (TTAB 2012) (affirmative defenses not pursued at trial considered waived).

The parties have fully briefed the cancellation.

## I.    The Record

The record in this case consists of the pleadings and the file of the involved registration. Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1). In addition, the record contains:

A. Evidence submitted by Petitioner:

1.   Petitioner's Notice of Reliance (19 TTABVUE) submitting:

a. Respondent's articles of organization (19 TTABVUE 16);

b. Various papers pertaining to Prior Opposition No. 91200223 (19 TTABVUE 18-23, 25-28, 30-209, 226-30, 232-49, 252-61, 264-76, 278-300, and 306-08), including the declaration of Troy Arnsten, Petitioner's President and co-founder, dated April 5, 2013;

c. Respondent's Responses to Petitioner's Requests for Admission in the cancellation proceeding (19 TTABVUE 310-23);

d. Respondent's Responses to Petitioner's Requests for Production in the cancellation proceeding (19 TTABVUE 325-59);

e. Respondent's documents produced in response to Petitioner's Requests for Production of Documents in the cancellation proceeding (Exh. 16, 19 TTABVUE 361-577);[9] and

---

[9] Petitioner's Notice of Reliance states, "Petitioner submits these documents into evidence pursuant to Trademark Rules 2.120(k) [37 C.F.R. § 2.120(k)] and TBMP section 704.11 to prove that Registrant did not produce any evidence in this proceeding that was different than the evidence it submitted in the Opposition Proceeding and to establish that the Subject Mark

f. printouts of Petitioner's webpages (19 TTABVUE 579, 581, 583, 585, 587, 589, 591-94, 596-98, 600 and 602).[10]

2. Petitioner's rebuttal Notice of Reliance submitting the declaration of Eric Goodman, Petitioner's attorney and exhibits (27 TTABVUE 4-5, 7-12).[11]

B. Evidence submitted by Respondent:

1. The Declaration[12] of Clarence Hendricks, Respondent's Manager and Marketing Director (21 TTABVUE 2-4), and its Exhibit A (redacted tax forms) (21 TTABVUE 6-17), Exhibit B (a redacted profit and loss statement for 2020) (21 TTABVUE 19-21), and Exhibit C (webpages from several publications) (21 TTABVUE 23-85);

---

has not acquired secondary meaning." (19 TTABVUE 10, bracketed material in original). A party may not make documents produced under Fed. R. Civ. P. 34 by its opponent "of record by notice of reliance alone, except to the extent that they are admissible by notice of reliance under 37 C.F.R. § 2.122(e) (as official records; or as printed publications, such as books and periodicals, available to the general public in libraries or of general circulation among members of the public or that segment of the public which is relevant under an issue in the proceeding; or Internet documents); or unless the documents have been authenticated by an admission or stipulation from the producing party." TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 704.11 (2022). *See* discussion, *supra*, regarding Petitioner's objection to Exhibit 16.

[10] The webpages are admissible for what they show on their face, *see* Trademark Rule 2.122(e)(2), 37 C.F.R. § 2.122(e)(2). Petitioner may not rely on them for the truth of any matter asserted, unless supported by testimony or other evidence. Fed. R. Evid. 801(c); *WeaponX Perf. Prods. Ltd. v. Weapon X Motorsports, Inc.*, 126 USPQ2d 1034, 1038 (TTAB 2018); *Safer, Inc. v. OMS Invs., Inc.*, 94 USPQ2d 1031, 1039-40 (TTAB 2010); TBMP § 704.08(b) ("The probative value of Internet documents is limited. They can be used to demonstrate what the documents show on their face. However, documents obtained through the Internet may not be used to demonstrate the truth of what has been printed.").

[11] The better practice would have been for Petitioner to file and serve separately a copy of the testimony declaration, instead of attaching it as an exhibit to its Notice of Reliance. Petitioner's failure to do so is of no consequence. *See WeaponX Perf. Prods.,* 126 USPQ2d at 1037.

[12] The declaration is titled, "Affidavit of Clarence Hendricks," but does not bear the stamp or signature of a notary public. It bears the typical attestation clause regarding the penalty of perjury found in declarations. We refer to it as a declaration.

2. Unredacted copies of Exhibits A (23 TTABVUE 3-14) and Exhibit B (23 TTABVUE 16-18) to Mr. Hendricks' declaration, filed under seal;[13] and

3. Respondent's Notice of Reliance on (a) the same webpages submitted as Exhibit C to Mr. Hendricks' declaration (23 TTABVUE 2-3, 8-80);[14] and (b) Petitioner's Responses to Respondent's First Set of Interrogatories (23 TTABVUE 82-92).

## II. Evidentiary Objections

### 1. Respondent's Objection to the Arnsten Declaration.

Trademark Rule 2.122(g), 37 C.F.R. § 2.122(g), sets forth the types of evidence admissible by notice of reliance – it includes official records (addressed in Trademark Rule 2.122(e), 37 C.F.R. § 2.122(e)) but not testimony from other proceedings (addressed in Trademark Rule 2.122(f), 37 C.F.R. § 2.122(f)). "'[O]fficial records' … are records prepared by a public officer which are self-authenticating in nature (and hence require no extrinsic evidence of authenticity as a condition precedent to admissibility), such as certified copies of public records." *The Conde Nast Publ'ns Inc. v. Vogue Travel, Inc.*, 205 USPQ 579, 580 n.5 (TTAB 1979).

Petitioner, referencing TBMP § 704.07 titled "Official Records," submitted Mr. Arnsten's April 5, 2013 declaration as an official record from the Prior Opposition

---

[13] Because the exhibits were filed under seal, there was no need for Respondent to file a separate motion (22 TTABVUE) to maintain the exhibits under seal. *See* TBMP § 703.01(p). Respondent's "Motion to File Under Seal and Keep Confidential" (filed July 17, 2021) is moot and the documents have been maintained by the Board as confidential in accordance with the Board's standard protective order.

[14] There was no need to for Respondent to resubmit the webpages. The Board prefers that parties not re-submit evidence. *See ITC Entm't. Grp. Ltd. v. Nintendo of Am. Inc.*, 45 USPQ2d 2021, 2022-23 (TTAB 1998) (submission of duplicative papers is a waste of time and resources, and is a burden upon the Board to sort through to determine which are unnecessary duplicates).

under Rule 2.122(e).[15] The submission in the cancellation included an ESTTA cover sheet from the opposition, which the USPTO creates using information submitted by the filing party. *See* TBMP § 309.02(a) ("[T]he ESTTA form (docket) 'cover sheet' [is] created using ESTTA ….").

Respondent objects to the admissibility of Mr. Arnsten's declaration, as improperly introduced in the present proceeding with Petitioner's Notice of Reliance.[16] Respondent offers two reasons why it believes the declaration is inadmissible. First, Respondent states that that the declaration is not the type of evidence admissible under a notice of reliance under Rule 2.122(g); that "testimony from a prior proceeding is a separate category of evidence addressed in 37 C.F.R. § 2.122(f)";[17] and that Respondent should have filed a motion to admit the testimony but did not do so.[18] Second, Respondent states that the declaration was untimely under Trademark Rule 2.121(a), 37 C.F.R. § 2.121(a), because Mr. Arnsten executed it on April 5, 2013, which was not during Petitioner's testimony period in the cancellation.[19]

---

[15] 19 TTABVUE 226-30. Mr. Arnsten states inter alia that he has "reviewed Laguna Candles' historical sales and they do not have any significant market share in the candle or home fragrance industry. They are essentially unknown in the marketplace." Arnsten Decl. ¶ 11, 19 TTABVUE 227.

[16] 31 TTABVUE 17-18.

The prior opposition decision, which Petitioner submitted in the cancellation identifies Mr. Arnsten's testimony as rebuttal trial testimony. (19 TTABVUE 280).

[17] Respondent has not objected to three opposition briefs along with their respective opposition ESTTA cover sheets, and therefore apparently concedes that filings from the Prior Opposition can qualify as official records.

[18] 31 TTABVUE 17-18.

[19] *Id.* at 18.

Petitioner contends that the declaration is admissible by a notice of reliance because it is part of the official opposition record and thus is admissible as an official record of the USPTO; that Respondent's objection is a procedural objection rather than a substantive objection and should have been raised promptly so that it could be cured; and that by waiting until the briefing period, Respondent waived its objection.[20]

Petitioner seeks to rely on the declaration as testimony. Rule 2.122(f) addresses the admission of testimony from a prior proceeding. It provides in relevant part that by order of the Board, on motion, testimony taken in another proceeding between the same parties may be used in a proceeding, so far as relevant and material, subject, however, to the right of any adverse party to recall or demand the recall for examination or cross-examination of the witness whose prior testimony has been offered and to rebut the testimony. "The purpose of …[R]ule [2.122(f)] is to offer a party a means for introducing testimony from a prior proceeding without having to call a witness to authenticate the testimony, thereby allowing a party a relatively quick and simple means by which to introduce testimony from another proceeding into evidence."[21] "[T]he Board has construed the term 'testimony,' as used in Trademark Rule 2.122(f), as meaning only trial testimony, or a discovery deposition which was used, by agreement of the parties, as trial testimony in the other

---

[20] Petitioner's reply p. 21, 33 TTABVUE 23.

[21] TBMP § 704.13.

proceeding." *Threshold.TV, Inc. v. Metronome Enters., Inc.*, 96 USPQ2d 1031, 1035 n.8 (TTAB 2010).

As noted, Rule 2.122(f) conditions admission of testimony from another proceeding on the right of any adverse party to recall or demand the recall for examination or cross-examination of the witness whose prior testimony has been offered and to rebut the testimony. By filing the Arnsten declaration as an official record, Petitioner sidestepped Rule 2.122(f) and bypassed the Board's oversight of Respondent's right under that rule to recall Mr. Arnsten for examination or cross-examination. Petitioner's approach improperly foreclosed Respondent's opportunity to cross-examine Mr. Arnsten regarding his statements. Because Petitioner did not comply with the requirements of Rule 2.122(f), Respondent's objection to the Arnsten declaration is a valid one, even if the declaration is an official record under Rule 2.121(e).

Turning next to whether Respondent waived its valid Rule 2.122(f) objection to Mr. Arnsten's declaration by not raising the objection promptly after Petitioner submitted the declaration in the present proceeding, we note:

> "As a general rule, [procedural] objections that are curable must be seasonably raised, or they will be deemed waived." *Nahshin v. Prod. Source Int'l, LLC*, 107 USPQ2d 1257, 1259 (TTAB 2013)[, *aff'd*, 112 F. Supp. 2d 383 (E.D. Va. 2015)]. *See also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 707.03(a) (2019) ("Objections to trial testimony are not waived for failure to make them during or before the taking of the deposition, provided that the ground for objection is not one that might have been obviated or removed if presented at that time.").

> "[O]bjections to ... testimony, on substantive grounds, such as that the proffered evidence constitutes hearsay or

> improper rebuttal, or is incompetent, irrelevant, or immaterial, generally are not waived for failure to raise them promptly, unless the ground for objection is one which could have been cured if raised promptly." TBMP § 707.04 ….

*Moke Am. LLC v. Moke USA, LLC*, 2020 USPQ2d 10400, \*4 (TTAB 2020), *civil action filed*, No. 3:20-cv-00400-DJN-EWH (E.D. Va. June 5, 2020).

We find that Respondent's Rule 2.122(f) objection is a procedural objection that could have been cured through the filing of a motion with the Board under Rule 2.122(f), and should have been raised promptly after Petitioner filed Mr. Arnsten's declaration. The objection pertains to Petitioner's failure to follow Board rules regarding the submission of evidence and does not concern the substance of Mr. Arnsten's testimony. Respondent therefore has waived its otherwise valid Rule 2.122(f) objection, and we have considered the Arnsten declaration.

We now turn to Respondent's second objection, that Mr. Arnsten's April 5, 2013 declaration was executed outside of Petitioner's testimony period in the cancellation, and hence is untimely. Trademark Rule 2.121(a) provides that "[n]o testimony shall be taken or evidence presented except during the times assigned, unless by stipulation of the parties approved by the Board, or upon motion granted by the Board, or by order of the Board." Rule 2.121(a) addresses testimony in the present proceeding, not testimony from a prior proceeding. Because we treat the Arnsten declaration as testimony from a prior proceeding governed by Rule 2.122(f),[22] Rule

---

[22] Mr. Arnsten's declaration bears the caption "Opposition No. 91200223." 19 TTABVUE 226.

2.121(a) is inapplicable, as it concerns testimony in the ordinary course of current proceedings.

### 2. Respondent's Objections to Exhibit 16 to Petitioner's Notice of Reliance.

Exhibit 16 consists of product sheets and photographs of Respondent's LAGUNA CANDLES products. Petitioner's Notice of Reliance states:

> Petitioner submits as Exhibit 16 the complete set of documents produced by [Respondent] in response to Petitioner's First Request for Production of Documents. Petitioner submits these documents into evidence pursuant to Trademark Rules 2.120(k) … and TBMP section 704.11 to prove that [Respondent] did not produce any evidence in this proceeding that was different than the evidence it submitted in the Opposition Proceeding and to establish that the Subject Mark has not acquired secondary meaning.[23]

Respondent objects to Exhibit 16, stating, "a party cannot introduce documents obtained through discovery by notice of reliance alone," citing Trademark Rule 2.120(k), 37 C.F.R. § 2.120(k), and TBMP § 704.11.

Trademark Rule § 2.120(k)(3)(ii), 37 C.F.R. § 2.120(k)(3)(ii), provides that "[a] party that has obtained documents from another party through disclosure or under Rule 34 of the Federal Rules of Civil Procedure may not make the documents of record by notice of reliance alone, except to the extent that they are admissible by notice of reliance under the provisions of § 2.122(e) [regarding printed publications, official records and internet materials], or the party has obtained an admission or stipulation

---

[23] 19 TTABVUE 10.

from the producing party that authenticates the documents." *See also* TBMP § 704.11.

Respondent's objection, however, is a procedural objection. As mentioned above, "[a]s a general rule, [procedural] objections that are curable must be seasonably raised, or they will be deemed waived." *Nahshin*, 107 USPQ2d at 1259; *see also* TBMP § 707.04. Because Respondent did not assert its objection promptly after Petitioner submitted Respondent's produced documents, but asserted the objection for the first time with its brief, Respondent waived its objection to Exhibit 16.

If Respondent had not waived its objection, Exhibit 16 nonetheless would be admissible because Mr. Goodman refers to Exhibit 16 in his declaration, thereby making Exhibit 16 part of his declaration. He states, "[s]ubmitted as Exhibit 16 to Petitioner's initial Notice of Reliance are copies of all documents that my firm was able to download from the link [Respondent's] counsel sent me on November 21, 2020."[24] Mr. Goodman's statement identifies and authenticates the documents in Exhibit 16 as those produced by Respondent's counsel. Thus, even if Respondent had not waived its objection, Exhibit 16 was properly introduced through Mr. Goodman's declaration.

For the foregoing reasons, Respondent's objection to Exhibit 16 is overruled.

### 3. Petitioner's Objections to the Hendricks Declaration.

In its "Objections to Evidence" filed along with its brief, Petitioner objects to Exhibit A to the Clarence Hendricks Declaration, which consists of Sharie Hendricks'

---

[24] Goodman Rebuttal Decl. ¶ 9, 27 TTABVUE 5.

Schedule C "Profit or Loss from Business" tax form for 2011 – 2013 and Respondent's tax returns for 2014 – 2019.[25] According to Petitioner, it requested this material in discovery and it was not produced by Respondent.[26] Petitioner seeks application of the estoppel sanction.[27]

In its brief, Petitioner broadens its objection, stating that "most of the financial records submitted by [Respondent] with … the Hendricks Affidavit are inadmissible and should not be considered by the Board because they were not produced in discovery."[28] Petitioner does not specify whether the term "financial records" includes Exhibit B, consisting of Respondent's profit and loss statement for 2020. We give Petitioner the benefit of any doubt and interpret its objection as being directed to both Exhibits A and B.

---

[25] Sharie Hendricks operated Respondent's business as a sole proprietorship and is the "organizer" of Respondent, a member-managed California limited liability company. Hendricks Decl., ¶ 3, 21 TTABVUE 2.

[26] Petitioner cites to Petitioner's Req. for Production No. 6 and 7, which respectively seek (i) "[c]opies of YOUR financial statements (including, without limitation, YOUR income and expense statements, profit and loss statements, sales journals, accounts receivable reports, and balance sheets ) from the date YOU were formed to the present"; and (ii) "[c]opies of the financial statements (including, without limitation, your income and expense statements, profit and loss statements, sales journals, accounts receivable reports, and balance sheets) for the PRIOR APPLICANT from October 2003 to the present." 19 TTABVUE 330-32.

[27] Under the estoppel sanction, a party that fails to provide information during discovery may, upon motion or objection by its adversary, be precluded from using that information or witness at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). *See, e.g., Panda Travel, Inc. v. Resort Option Enters., Inc.*, 94 USPQ2d 1789, 1792-93 (TTAB 2009) (documents not produced until after the start of trial stricken); *see also* TBMP § 527.01(e) ("Estoppel Sanction") and cases cited therein.

[28] 30 TTABVUE 20. Petitioner cites to Petitioner's Req. for Production No. 6 and 7 (19 TTABVUE 330-32) and to Exh. 16 to Petitioner's Notice of Reliance (19 TTABVUE 361-577) which Petitioner represents is the entirety of Respondent's document production.

We need not rule, however, on Petitioner's objections to Exhibits A and B, including its relevancy objection to both exhibits, because we need not rely on the limited information contained within the exhibits to decide this case. *See Waltco Truck Equip. Co., Inc. v. Maxon Indus., Inc.*, 218 USPQ 450, 453 n.2 (TTAB 1983) ("While we need not rule on the propriety of either petitioner's or respondent's objections to certain evidence and testimony, the testimony and evidence made of record without objection by either party is sufficient to persuade us to grant the petition for cancellation."). Mr. Hendricks provided adequate financial information regarding Respondent's business in his declaration, to which Petitioner has not objected.[29]

Petitioner also raised a lack of foundation objection to various statements in the Hendricks declaration. Such objections are untimely because they are substantive in nature and were raised for the first time in Petitioner's brief, not promptly after its submission. *Int'l Dairy Foods Ass'n v. Interprofession du Gruyère, & Syndicat Interprofessionnel du Gruyère*, 2020 USPQ2d 10892, at *3-7 (TTAB 2020) (when raised for the first time with main brief, objection on the basis of lack of foundation was untimely and waived), *aff'd*, ___ F. Supp. 3d ___, 2021 WL 6286234 (E.D. Va. Dec. 15, 2021), *appeal docketed*, No. 22-1041 (4th Cir. Jan. 11, 2022). Petitioner thus has waived its objection.

---

[29] Mr. Hendricks identified the number of candles Respondent sold and Ms. Hendricks' and Respondent's gross receipts for various time periods. Hendricks Decl. ¶¶ 6-8, 21 TTABVUE 3-4.

With regard to Petitioner's remaining evidentiary objections to the Hendricks declaration, "[t]o the extent an objection has not been specifically addressed above, we have considered the evidence, keeping in mind the objections, and have accorded the testimony and evidence whatever probative value they merit." *Panda Travel*, 94 USPQ2d at 1793; *see also Grote Indus., Inc. v. Truck-Lite Co., LLC*, 126 USPQ2d 1197, 1200 (TTAB 2018) *judgment rev'd and vacated by consent decree*, No. 1:18-cv-00599 (W.D.N.Y. June 8, 2022) ("We also remind the parties that our proceedings are tried before judges not likely to be easily confused or prejudiced. Objections to trial testimony on bases more relevant to jury trials are particularly unnecessary in this forum.") (citing *U.S. Playing Card Co. v. Harbro LLC*, 81 USPQ2d 1537, 1540 (TTAB 2006)); *RxD Media, LLC v. IP Application Dev. LLC*, 125 USPQ2d 1801, 1804 (TTAB 2018), *aff'd*, 377 F. Supp. 3d 588 (E.D. Va. 2019), *aff'd*, 986 F.3d 361, 2021 USPQ2d 81 (4th Cir. 2021); *Kohler Co. v. Honda Giken Kogyo K.K.*, 125 USPQ2d 1468, 1478 (TTAB 2017) (quoting *Luxco, Inc. v. Consejo Regulador del Tequila, A.C.*, 121 USPQ2d 1477, 1479 (TTAB 2017)). We have kept Petitioner's objections in mind in considering and determining the probative value of Respondent's evidence.

### 4. Respondent's Objection to the Goodman Declaration.[30]

Petitioner relies on the Goodman declaration in objecting to the financial documents in Exhibits A and B to the Hendricks Declaration discussed above.

---

[30] 27 TTABVUE 4-12.

According to Petitioner, Respondent never produced the financial documents even though Petitioner requested such documents.[31]

Respondent objects to the Goodman declaration as irrelevant because the declaration offers Petitioner's counsel's testimony regarding discovery issues.[32] Exhibit 27 to the declaration consists of email exchanges between counsel.

Because we do not consider Exhibits A and B to the Hendricks declaration in resolving the issues presented in this proceeding, we need not rule on Respondent's relevancy objection to the Goodman declaration.

### III.    Entitlement to a Statutory Cause of Action

"Even though [Respondent] in [its] brief do[es] not contest [Petitioner's] entitlement to invoke the statutory causes of action of … a cancellation, such is an element of the plaintiff's case in every inter partes proceeding." *Chutter, Inc. v. Great Mgmt. Grp., LLC*, 2021 USPQ2d 1001, *10 (TTAB 2021), *appeal docketed*, No. 22-1212 (Fed. Cir. 2021); *see also Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837 (Fed. Cir. 2020), *cert. denied*, 142 U.S. 82 (2021); *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014). To establish entitlement to a statutory cause of action, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the statute, and (ii) a

---

[31] 30 TTABVUE 22.

[32] 31 TTABVUE 19-20.

reasonable belief in damage proximately caused by the registration of the mark. S*panishtown Enters., Inc. v. Transcend Res., Inc.*, 2020 USPQ2d 11388, at \*1 (TTAB 2020) (citing *Corcamore*, 2020 USPQ2d 11277, at \*4). *See also Empresa Cubana*, 111 USPQ2d at 1062; *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (TTAB 1982).[33]

Respondent admitted that Petitioner sells candles bearing the term "LAGUNA,"[34] but denied that the parties are competitors.[35] Respondent, however, submitted Petitioner's response to one of Respondent's interrogatories, stating:

> Petitioner is a well-known manufacturer of luxury candles and other home fragrance products under the mark VOLUSPA. … Petitioner's products are sold throughout the country. In early 2010, Petitioner commenced sales of its Maison Laguna line of candles. Petitioner and Registrant are competitors in the same field or industry.[36]

---

[33] The Board no longer analyzes the requirements of Sections 13 and 14 of the Trademark Act, 15 U.S.C. §§ 1063-64, under the rubric of "standing." *Corcamore*, 2020 USPQ2d 11277, at \*6-7 ("standing" is more appropriately referred to as entitlement to bring a statutory cause of action). Despite the change in nomenclature, our prior decisions and those of the Court of Appeals for the Federal Circuit interpreting Sections 13 and 14 remain applicable. *See Spanishtown Enters.*, 2020 USPQ2d 11388, at \*2.

[34] Respondent's Response to Petitioner's Interrog. No. 2, 19 TTABVUE 311.

[35] Answer, ¶ 10, 12 TTABVUE 5.

[36] Petitioner's Response to Respondent's Interrog. No. 1, 23 TTABVUE 85. Petitioner's interrogatory responses are signed by Petitioner's attorney. While not the better practice, interrogatory answers which have been verified by a party's attorney are permissible under Fed. R. Civ. P. 33(a). *See Allstate Insurance Co. v. Healthy America Inc.*, 9 USPQ2d 1663, TTAB 1988); TBMP § 405.04(c) ("The term 'agent' includes an attorney, who may answer even though he has no personal knowledge of the facts stated in the answers; the attorney's answers, like an officer's or partner's answers, must contain the information available to the party served. However, an attorney who answers interrogatories on behalf of a corporation, partnership, association, or governmental agency may thereafter be exposed to additional discovery and possibly even disqualification.").

Despite Respondent's denial, we find in light of the admission and interrogatory response that the parties are competitors and that Petitioner is entitled to pursue a statutory cause of action in connection in light of this evidence.[37] *See Books on Tape, Inc. v. Booktape Corp.*, 836 F.2d 519, 5 USPQ2d 1301, 1302 (Fed. Cir. 1987) (competitor has standing); *Alcatraz Media*, 107 USPQ2d at 1760 (finding standing based on petitioner being a competitor and using a similar term).

## IV.    Lack of Acquired Distinctiveness

Where, as here, a mark is registered under Section 2(f), Respondent's mark's lack of inherent distinctiveness is a nonissue; Respondent's reliance on Section 2(f) presumes that the mark is primarily geographically descriptive and not inherently distinctive. *See Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 92 USPQ2d 1626, 1629 (Fed. Cir. 2009) ("where an applicant seeks registration on the basis of Section 2(f), the mark's descriptiveness is a nonissue; an applicant's reliance on Section 2(f) during prosecution presumes that the mark is descriptive").

Section 2(f) allows for the registration of mark which has become distinctive of an applicant's goods in commerce. It states:

> [N]othing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The [USPTO] Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially

---

[37] Mr. Arntsen's declaration states that on October 1, 2010, Petitioner received a cease and desist letter from "a Laguna Beach proprietor doing business as 'Laguna Candles …," and submitted the letter as Exhibit A. Arnsten Decl. ¶ 7, 19 TTABVUE 21. Because of the age of the cease and desist letter, it has limited persuasive value in establishing Petitioner's entitlement to a statutory cause of action.

> exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made.

"To show that a mark has acquired distinctiveness, an applicant must demonstrate that the relevant public understands the primary significance of the mark as identifying the source of a product or service rather than the product or service itself." *In re Steelbuilding.com*, 415 F.3d 1293, 75 USPQ2d 1420, 1422 (Fed. Cir. 2005); *see also Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1729 (Fed. Cir. 2012).

"In a cancellation proceeding, acquired distinctiveness may be determined at the time of registration or trial." *Grote Indus.,* 126 USPQ2d at 1211; *see also* Louis Altmann and Malla Pollack, CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 26:80 (4th ed. 2021) ("In 2018, the TTAB clarified that the mark is cancelled if it either was without distinctiveness when registered or is shown to lack distinctiveness at the time of trial."). The Board has explained:

> In most cases, the time period of primary concern is the time when the registration issued. If a petitioner can establish that at … [the] time [when the registration issued], the registered mark was merely descriptive, then it is incumbent upon the registrant to establish that prior to the issuance of the registration, the registered mark had acquired a secondary meaning in the sense that its primary significance was that of a source indicator of goods emanating from registrant. Thus, … the petitioner would … prevail if it is established that as of the time of registration, the mark was merely descriptive and was devoid of secondary meaning.
>
> … [I]t is permissible for [a] petitioner to … plead that the registered mark *currently* is merely descriptive and that the mark *currently* lacks a secondary meaning. If the petitioner were to so plead and were to establish that the

registered mark is currently inherently merely descriptive, then the burden would be on the registrant to show that the mark currently has a secondary meaning in the sense that it functions primarily as a source indicator of goods emanating from the registrant.

In sum, if it is established either that as of the time of registration, the registered mark was merely descriptive and lacked a secondary meaning, or that as of the present time [at trial], the mark is merely descriptive and lacks a secondary meaning, the cancellation petition would be granted. Of course, in the majority of cases, it is unlikely that a petitioner who is unable to make out a case of mere descriptiveness based on matters as they stood at the time of registration would be able to make out a case based on matters as they presently stand. This is because as the registrant makes more use of its mark with the passage of time, it is likely that secondary meaning will only increase, not decrease. (citations omitted).

*Neapco Inc. v. Dana Corp.*, 12 USPQ2d 1746, 1747 (TTAB 1989).

We look to the Petition to Cancel, its ESTTA cover sheet[38] and Petitioner's trial brief to determine the time when Petitioner alleges Respondent failed to establish acquired distinctiveness. *See id.* (summary judgment motion and petition to cancel used present tense in stating that the registered mark is merely descriptive). The Petition to Cancel uses the present tense, alleging that the '702 registration "should be cancelled because the Subject Mark consists of matter which, when applied to [Respondent's] goods, is … primarily geographically descriptive …." The ESTTA cover sheet submitted with the Petition to Cancel also uses the present tense, identifying as a ground for cancellation, "[t]he mark is primarily geographically descriptive" and "[t]he mark is not inherently distinctive and has not acquired distinctiveness."

---

[38] *See Schott AG v. Scott*, 88 USPQ2d at 1863 n.3 ("[T]he ESTTA generated filing form ... is considered part of the plaintiff's initial pleading.").

Petitioner's brief states "[t]here cannot be any dispute in this case that the Subject Mark is primarily geographically descriptive"[39] and refers to Mr. Hendrick's declaration and Respondent's trial submissions to establish acquired distinctiveness.[40] Petitioner does not address Respondent's Section 2(f) declaration, submitted when Respondent filed its underlying application, in its briefs. We therefore construe Petitioner's claim as alleging that Respondent's mark is primarily geographically descriptive and lacks secondary meaning **at the time of trial**. *See Grote Indus.,* 126 USPQ2d at 1211 ("[I]t is permissible for the petitioner to … plead that the registered mark currently is merely descriptive and that the mark currently lacks a secondary meaning" (citing *Neapco*, 12 USPQ2d at 1747)).

The Federal Circuit has provided the following guidance in such situations:

> The party seeking to cancel registration of a mark always bears the burden of persuasion, that is, the ultimate burden of proving invalidity of the registration by a preponderance of the evidence.
>
> Initially, the party seeking cancellation also bears the "burden to establish a prima facie case" that the registration is invalid. *Yamaha* [*Int'l Corp. v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572, 6 USPQ2d 1001, 1007 n.9 (Fed. Cir. 1988)]. In a Section 2(f) case, the party seeking cancellation bears the initial burden to "establish a prima facie case of no acquired distinctiveness." *Id.* at 1576. To satisfy this initial burden, the party seeking cancellation must "present sufficient evidence or argument on which the board could reasonably conclude" that the party has overcome the record evidence of acquired distinctiveness -- which includes everything submitted by the applicant during prosecution. *Id.* at 1576-77. The burden of producing additional evidence or argument in defense of

---

[39] 30 TTABVUE 15.

[40] *Id.* at 20.

> registration only shifts to the registrant if and when the party seeking cancellation establishes a prima facie showing of invalidity. The Board must then decide whether the party seeking cancellation has satisfied its ultimate burden of persuasion, based on all the evidence made of record during prosecution and any additional evidence introduced in the cancellation proceeding.

*Cold War Museum*, 92 USPQ2d at 1630; *see also Grote Indus.*, 126 USPQ2d at 1211 ("If the petitioner were to … plead and were to establish that the registered mark is currently inherently merely descriptive, then the burden would be on the registrant to show that the mark currently has a secondary meaning in the sense that it functions primarily as a source indicator of goods emanating from the registrant." (citing *Neapco* 12 USPQ2d at 1747)).

Before determining whether Petitioner has satisfied its "'burden to establish a prima facie case' that the registration is invalid," *Cold War Museum*, 92 USPQ2d at 1630, we consider the degree of geographic descriptiveness of the registered mark, because it "is helpful in laying a foundation for our discussion of acquired distinctiveness." *Spiritline Cruises LLC v. Tour Mgmt. Servs., Inc.*, 2020 USPQ2d 48324, *5 (TTAB 2020); *see also Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2d 1041, 1047 (Fed. Cir. 2018) ("[T]he … burden of showing acquired distinctiveness increases with the level of descriptiveness; a more descriptive term requires more evidence of secondary meaning" (citing *Steelbuilding.com*, 75 USPQ2d at 1424)); *id.* at 1048 ("[T]he Board must make an express finding regarding the degree of the mark's descriptiveness on the scale ranging from generic to merely descriptive, and it must explain how its assessment of the evidentiary record reflects that finding."); *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 116 USPQ2d 1262,

1265-66 (Fed. Cir. 2015) (Board was within its discretion not to accept applicant's allegation of five years' use given the highly descriptive nature of the mark); *In re Boston Beer Co.*, 198 F.3d 1370, 1373 (Fed. Cir. 1999) ("[T]he greater the degree of descriptiveness the term has, the heavier the burden to prove it has attained secondary meaning." (quoting *In re Bongrain Int'l (Am.) Corp.*, 894 F.2d 1316, 13 USPQ2d 1727, 1727 n.4 (Fed. Cir. 1990)).

In cases of geographic descriptiveness, this inquiry can involve evidence that the place named in the mark is very well known, and that third parties in the same industry use the geographic place name in connection with their goods. *Spiritline Cruises*, 2020 USPQ2d 48324, at *6.[41] Petitioner submitted the following from the prior opposition record:

> ● definitions of "laguna" in English and foreign language dictionaries;[42]
>
> ● a definition of "laguna" from Wikipedia;[43]
>
> ● Wikipedia entries for "Laguna" in the Philippines, "Laguna, Santa Catarina" in Brazil, "Laguna City" in Hong Kong, "Laguna, Imperial County, California" (identified as "a former settlement in Imperial County, California") and "Laguna Army Airfield";[44]

---

[41] "A mark is primarily geographically descriptive if: (1) the primary significance of the mark is the name of a place that is generally known; (2) the goods or services originate in the place identified in the mark; and (3) the relevant purchasers would associate the identified services with the place named, i.e., the public would believe that the services come from the place named." *Spiritline Cruises*, 2020 USPQ2d 48324, at *15 (citing *In re Nantucket, Inc.*, 677 F.2d 95, 213 USPQ 889, 891 (CCPA 1982)).

[42] 19 TTABVUE 34-36.

[43] *Id.* at 37-41.

[44] *Id.* at 42-61.

● webpages from the California towns of Laguna Miguel, Laguna Hills and Laguna Woods;[45]

● Wikipedia pages for Orange County, California;[46] and

● a list of companies in Laguna Beach, California.[47]

Petitioner also submitted Respondent's interrogatory answers, pleadings and briefs in the Prior Opposition, and Respondent's responses to requests for admissions, document requests and documents produced by Respondent in the cancellation.[48] This material, as well as Respondent's evidence and Petitioner's rebuttal evidence, has little bearing on the degree of geographic descriptiveness of the term LAGUNA. There are no third-party uses, or newspaper or magazine articles referring to third-party uses, *i.e.*, the type of evidence the Board found helpful in concluding that the geographic terms in *Spiritline Cruises* and *Alcatraz Media* were highly geographically descriptive. Even the Orange County Wikipedia webpages do not contain much information about Laguna Beach – the Orange County Wikipedia webpage states that Anaheim is the main tourist hub in Orange County.[49] Respondent's webpages mention that Respondent is in Laguna Beach,[50] and Mr. Arnsten states in his declaration that the town of Laguna Beach is often referred to as "Laguna."[51] That alone or in combination with the other evidence does not

---

[45] *Id.* at 62-68.

[46] *Id.* at 70-85.

[47] *Id.* at 86-105.

[48] *Id.* at 210-76, 310-59.

[49] *Id.* at 42-61.

[50] *Id.* at 600-602.

[51] Arnsten Decl. at ¶ 10, 19 TTABVUE 227.

persuade us that "laguna" is highly geographically descriptive. Based on the evidence before us, and considering that the term CANDLES is a generic term for Respondent's goods which Respondent uses in its identification of goods, we find that the degree of geographic descriptiveness of the term LAGUNA CANDLES is modest.

Having identified the degree of geographic descriptiveness of the term LAGUNA CANDLES, we turn to the evidence pertaining to acquired distinctiveness. "[T]he considerations to be assessed in determining whether a mark has acquired secondary meaning can be described by the following six factors: (1) association of the trade[mark] with a particular source by actual purchasers (typically measured by customer surveys); (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage of the product embodying the mark." *Converse, Inc. v. Int'l Trade Comm'n*, 907 F.3d 1361, 128 USPQ2d 1538, 1546 (Fed. Cir. 2018). Although all six factors are to be weighed together in determining the existence of secondary meaning, no single factor is determinative. *In re Virtual Indep. Paralegals, LLC*, 2019 USPQ2d 111512, at *11 (TTAB 2019) ("On this list, no single fact is determinative." (citing *In re Tires, Tires, Tires Inc.*, 94 USPQ2d 1153, 1157 (TTAB 2009)).

"Acquired distinctiveness may be shown by direct or circumstantial evidence. Direct evidence of acquired distinctiveness includes actual testimony, declarations or surveys of consumers as to their state of mind (e.g., factor 1). Circumstantial evidence, on the other hand, is evidence from which consumer association might be

inferred, such as years of use, extensive sales and advertising, and any similar evidence showing wide exposure of the mark to consumers (e.g., factors 2 through 6)." *Milwaukee Elec. Tool Corp. v. Freud Am., Inc.*, 2019 USPQ2d 460354, at \*24 (TTAB 2019) (citing *In re Ennco Display Sys. Inc.*, 56 USPQ2d 1279, 1283 (TTAB 2000)), *vacated-in-part, affirmed-in-part by consent judgment*, No. 1:20-cv-00902-RGA (D. Del. Apr. 12, 2022).

The evidence Respondent filed with its application that matured into the involved registration consisted of only the Section 2(f) declaration of substantially exclusive and continuous use for five years.[52] "[P]etitioner may carry its initial burden of showing prima facie invalidity by introducing evidence at trial that the mark is so highly [geographically] descriptive that a mere declaration of five years continuous and substantially exclusive use is insufficient to establish acquired distinctiveness, so that actual evidence of acquired distinctiveness in the form of sales and advertising information and the like is necessary." *Alcatraz Media*, 107 USPQ2d at 1765. In view of the deficiencies explained above, Petitioner has not met its burden. Additionally, while some of Petitioner's evidence is the same evidence that the Board relied on in the prior proceeding to find that Respondent's mark had not acquired distinctiveness, its probative value is reduced because of its age. Much of it – including the statement in Mr. Arnsten's declaration that he has "reviewed Laguna Candles' historical sales

---

[52] "The fact that respondent's mark was registered pursuant to Section 2(f) based solely on a declaration of use does not preclude petitioner from introducing evidence that the mark is so highly descriptive as to require actual evidence of acquired distinctiveness in order to satisfy its initial burden of proof." *Alcatraz Media,* 107 USP0Q2d at 1765.

and they do not have any significant market share in the candle or home fragrance industry [and] [t]hey are essentially unknown in the marketplace"[53] – is from 2013, which was nearly ten years before trial. Petitioner has not supplemented that evidence to any significant extent. We find, therefore, that Petitioner has not overcome its initial burden of showing prima facie that a declaration of five years continuous and substantially exclusive use is insufficient to establish acquired distinctiveness.

Even if we were to find that Petitioner's evidence satisfied its initial burden of showing prima facie that Respondent's declaration of five years continuous and substantially exclusive use is insufficient to establish acquired distinctiveness, Petitioner's evidence does not overcome Respondent's collective evidence of acquired distinctiveness in the prosecution and trial record. Respondent has introduced evidence in addition to its Section 2(f) declaration that its sales and gross income have increased. Mr. Hendricks testified that "[s]pecifically, from December 6, 2001 through November 21, 2011, our business sold approximately 15,000 candles for approximately $384,000 (or approximately 1,500 candles per year for $38,400 per year)" (¶ 6), and that "[e]ach year from 2012 to the present, our annual sales of candles with the Mark has exceeded 15,000 units (the total amount sold from 2001 to 2011) [and] I estimate that our business sold 18,765 units in 2012; 24,875 units in 2013; and 30,270 units in 2014. From 2015 to the present, I estimate that our

---

[53] ¶ 11 Arnsten Decl., 19 TTABVUE 227.

business has sold an additional 324,318 units." (¶ 8).[54] In addition, Respondent has received press coverage referencing the LAGUNA CANDLES mark. Such press coverage has been in the online editions of the Los Angeles Times Daily Pilot, New York Magazine, Allure, Cosmopolitan, Elle and Women's Health.[55] This evidence is sufficient to establish acquired distinctiveness for a mark which is modestly geographically descriptive.

Because Petitioner has not met its burden of persuasion, that is, "the ultimate burden of proving invalidity of the registration by a preponderance of the evidence," *Cold War Museum*, 92 USPQ2d 1620, Petitioner's claim of geographic descriptiveness with a lack of acquired distinctiveness at the time of trial is denied.

## V. Res Judicata

As noted, Petitioner claimed that the '702 registration should be cancelled because "[t]he Board's decision in the [Prior] Opposition Proceeding that the term 'Laguna Candles' cannot be registered because it is primarily geographically descriptive is res judicata."[56]

The Supreme Court has commented on the doctrine of res judicata:

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748,

---

[54] Hendricks Decl., 21 TTABVUE 3-4.

[55] *Id.* at 21-25, 57-72, 81-81, 82, 83, 84.

[56] Petition to Cancel ¶ 33, 1 TTABVUE 7.

> 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.*, at 748-749, 121 S. Ct. 1808, 149 L. Ed. 2d 968. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-154, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979).

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

Because Petitioner refers to claim preclusion, cites to *In re Bose Corp.*, 476 F.3d 1331, 81 USPQ2d 1748, 1752 (Fed. Cir. 2007), which addresses only claim preclusion, and does not argue issue preclusion, Petitioner has waived any assertion of issue preclusion, and we limit our discussion to claim preclusion. *Cf. Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 110 USPQ2d 1261, 1263 (Fed. Cir. 2014) ("[T]he judicial doctrine now generally known as claim preclusion, [was] earlier known as res judicata and still referred to by that name."); *Chutter, Inc. v. Great Concepts, LLC*, 119 USPQ2d 1865, 1868 (TTAB 2016) ("*Res judicata* is the earlier name for the judicial doctrine now generally known as claim preclusion." (citing *Urock Network, LLC v. Sulpasso*, 115 USPQ2d 1409, 1410 n.4 (TTAB 2015)).

**A. Background**

As mentioned, Respondent filed its application that matured into the '702 registration on February 25, 2014 under Section 1(a) of the Trademark Act, claiming first use and first use in commerce of the mark on October 17, 2003 in connection with "aromatherapy fragrance candles; candles; scented candles." The application

includes a claim of acquired distinctiveness under Section 2(f) of the Trademark Act based on substantially exclusive and continuous use of the mark in commerce for five years.

Petitioner did not introduce any filings made in the Prior Application into the cancellation record.[57] Instead, Petitioner submitted Respondent's admissions, made in the current proceeding, concerning the Prior Application:[58]

> On September 23, 2010, an applicant named "Laguna Candles" filed an application to register the trademark "Laguna Candles" for "candles and candle fragrances" in International Class 004. (Response to Req. No. 10).

> The Prior Application was assigned Application Serial No. 85137006. (Response to Req. No. 11).

> The Prior Application claimed a date of first use of "as early as October 17, 2003" for the Prior Mark. (Response to Req. No. 13).

> The Board issued a decision on October 2, 2013 sustaining Petitioner's opposition to the Prior Application. (Response to Req. No. 21).

> The October 2, 2013 Decision refuses registration of the Laguna Candles Mark on the grounds that the mark was primarily geographically descriptive and the evidence before the Board was insufficient to establish secondary meaning (Response to Req. No. 24 and 25).

## B. Claim Preclusion

This case involves offensive, not defensive, claim preclusion – it is the plaintiff in the proceeding that is asserting claim preclusion. *See, e.g., Sharp K.K. v. ThinkSharp*

---

[57] The Board's well-established practice is not to take judicial notice of USPTO records. *See, e.g., Cities Service Co. v. WMF of Am., Inc.*, 199 USPQ 493 (TTAB 1978) (judicial notice of third-party registrations may not be taken where no copies thereof are submitted).

[58] 19 TTABVUE 312-16.

*Inc.*, 448 F.3d 1368, 79 USPQ2d 1376, 1378-79 (Fed. Cir. 2006); *Chromalloy Am. Corp. v. Kenneth Gordon (New Orleans), Ltd.*, 736 F.2d 694, 222 USPQ 187, 189-90 (Fed. Cir. 1984). Petitioner argues that "the Board's decision in the Prior Decision established that the Subject Mark is primarily geographically descriptive and had not acquired distinctiveness."[59]

As articulated in *Jet Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 55 USPQ2d 1854, 1856 (Fed. Cir. 2000), claim preclusion requires:

> (1) an identity of parties (or their privies);
>
> (2) an earlier final judgment on the merits of a claim; and
>
> (3) a second claim based on the same set of transactional facts as the first.

*See also Empresa Cubana*, 111 USPQ2d at 1065; *Valvoline Licensing & Intell. Prop. LLC v. Sunpoint Int'l Grp. USA Corp.*, 2021 USPQ2d 785, at *6 (TTAB 2021). "Precedent cautions that res judicata is not readily extended to claims that were not before the court, and precedent weighs heavily against denying litigants a day in court unless there is a clear and persuasive basis for that denial." *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 39 USPQ2d 1949, 1952 (Fed. Cir. 1996); *see also Brown v. Felsen*, 442 U.S. 127, 132 (1979) (res judicata is "invoked only after careful inquiry").

### 1. Are the parties or their privies identical?

Petitioner in this proceeding was the opposer in the Prior Opposition. Thus, the plaintiffs in the two proceedings are identical.

---

[59] 30 TTABVUE 15.

The defendant in the present proceeding is Laguna Candles, LLC. The Board's opposition decision, however, identified the defendant as Laguna Candles, a sole proprietorship composed of Candice Hendricks,[60] even though "an individual named Sharie Denise Hendricks signed the Prior Application."[61] Its opposition trial brief explained, "Applicant Laguna Candles … is a small, family-owned purveyor of candles and home accessories primarily operated by Sharie Hendricks with the help of her husband Clarence and their two daughters Candice and Amy Hendricks."[62] The opposition decision makes no reference to an assignment from Sharie Hendricks to Candice Hendricks.

Mr. Hendricks explains:

> 2. My wife, Sharie D. Hendricks ("Sharie"), launched our family business in the early 2000's with the support and participation of me and our three daughters. …
>
> 3. Sharie operated our family business as a sole proprietorship until 2013, when the business was converted to a member-managed California limited liability company. The sole member-managers of [Respondent] are myself and Sharie.
>
> 4. Our family business has sold luxury, hand-crafted, eco-friendly candles under the mark LAGUNA CANDLES for nearly two decades.[63]

In addition, the record reflects that on July 1, 2003, Sharie D. Hendricks signed an Orange County, California "Fictious Business Name Statement" identifying

---

[60] 19 TTABVUE 278.

[61] Respondent's Resp. to Petitioner's Req. for Admission No. 12, 19 TTABVUE 313.

[62] 19 TTABVUE 253. *See also* Respondent's Resp. to Petitioner's Req. for Admission No. 30, 19 TTABVUE 318, admitting that Candice Hendricks is Sharie Hendricks' daughter.

[63] Hendricks Decl. ¶¶ 2-4, 21 TTABVUE 2.

herself and Candice S. Hendricks as "Registrant[s]" of the fictious name "Laguna Candles."[64] About five years later, on October 1, 2008, Sharie Hendricks signed another Orange County, California "Fictious Business Name Statement" identifying Sharie Hendricks alone as the owner of the fictious name "Laguna Candles Laguna Candles.com."[65] The Prior Application was filed on September 23, 2010.[66]

Respondent has not suggested that the defendants in the two proceedings were not identical or in privity, and admitted that the prior applicant, a sole proprietorship, was converted into Respondent, a California limited liability company.[67]

The Board's opposition decision identifies Candice Hendricks as the defendant, and Candice Hendricks is not a principal of Respondent. However, because of the family nature of the business, and the lack of evidence regarding any transfer from Sharie Hendricks (who signed the Prior Application) to Candice Hendricks, and the fact that Respondent does not dispute that the defendants in the opposition and cancellation are in privity, for purposes of this inquiry we consider the parties in the two proceedings to be identical or in privity. The first factor is satisfied.

### 2. Was the earlier final judgment on the merits of a claim?

The Board issued a final judgment on Petitioner's claim of geographic descriptiveness with no acquired distinctiveness in the prior proceeding, as tried by

---

[64] 19 TTABVUE 127.

[65] *Id.* at 124.

[66] Respondent's Resp. to Req. for Admissions No. 10, 19 TTABVUE 312.

[67] Respondent's Resp. to Req. for Admissions No. 14, 19 TTABVUE 313.

the consent of the parties under Fed. R. Civ. P. 15(b)(2). We therefore find that the second factor is satisfied regarding Petitioner's claim of geographic descriptiveness with no acquired distinctiveness.

### 3. Is the second claim based on the same set of transactional facts as the first?

"[C]ourts have defined 'transaction' in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same, factual allegations.'" *Jet*, 55 USPQ2d at 1856 (quoting *Herrmann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993)). Because there is no dispute that both proceedings involve the same mark for identical, and otherwise legally-identical, goods,[68] we must determine whether Respondent's claim of acquired distinctiveness in the Prior Opposition is based on the same set of factual allegations as its claim of acquired distinctiveness in the cancellation. *Id.* at 1957 ("Thus, we must determine whether, for purposes of claim preclusion, a claim for trademark infringement is based on the same set of factual allegations as a petition to cancel the defendant's federally registered mark.").

Petitioner argues that res judicata applies because "the Board found a mere four months before the filing of the Subject Application that the Subject Mark in fact had not acquired distinctiveness."[69] Respondent maintains that "[t]he doctrine[ ] of res judicata… [is] discretionary and will not be applied where circumstances relating to

---

[68] The "aromatherapy fragrance candles; candles; scented candles" in the '702 registration are legally identical to the "candles and fragrant candles" identified in the Prior Application.

[69] 33 TTABVUE 8.

trademark use and consumer recognition have changed since the prior judgment was rendered," noting that "the Prior Application was based on a claim of inherent distinctiveness, whereas the Subject Registration was filed under Section 2(f) on the basis of acquired distinctiveness."[70]

"The issue of whether res judicata bars relitigating the issue of [acquired distinctiveness] is a difficult one [as there] are no cases which expressly demarcate a minimum time that must elapse before a defendant can re-litigate the issue of [acquired distinctiveness]." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 76 USPQ2d 1865 (5th Cir. 2005). "[T]rademark rights are not static …." *In re Morton-Norwich Prods.*, 671 F.2d 1332, 213 USPQ 9, 18 (CCPA 1982), and "res judicata is not applicable where 'it is apparent that all the questions of fact and law involved … [in the second proceeding] were not determined in the previous proceeding.'" *In re Bose*, 81 USPQ2d at 1752 (quoting *Litton Indus., Inc. v. Litronix, Inc.*, 577 F.2d 709, 198 USPQ 280 (CCPA 1978) (internal citation omitted)).

"[T]here is nothing to preclude an applicant from attempting a second time in an ex parte proceeding to register a particular mark if conditions and circumstances have changed since the rendering of the adverse final decision in the first application." *In re Honeywell Inc.*, 8 USPQ2d 1600, 1601-02 (TTAB 1988); *In re Oscar Mayer & Co.*, 171 USPQ 571 (TTAB 1971). Professor McCarthy explains, "[a] prior decision that a designation was not protectable as a trademark because it was descriptive and lacked secondary meaning, does not preclude the party from later

---

[70] 31 TTABVUE 9.

arguing that in the time since that decision, consumer usage and perception has changed so that the designation has now achieved secondary meaning." 6 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:88 (5th ed. 2022). In a recent case involving an applicant who re-applied for the same mark for the same goods less than 20 months after the Board affirmed the refusal of registration of its mark on the ground of mere descriptiveness refusal, the Board stated that "the losing party must demonstrate a material change in the relevant conditions or circumstances … since the Prior Decision" for claim preclusion not to apply. *In re SolarWindow Techs., Inc.*, 2021 USPQ2d 257, at *8 (TTAB 2021); *see also Flowers Indus. Inc. v. Interstate Brands Corp.*, 5 USPQ2d 1580, 1584 (TTAB 1987) ("[A]n applicant who has received an adverse judicial determination of its right to registration … is not precluded thereby from seeking registration in a second application if the applicant can show that there has been a substantial change in the relevant facts since the rendering of the adverse final decision in its first application.") (citing *In re Oscar Meyer & Co., Inc.*, 171 USPQ 571 (TTAB 1971)).

The parties have not cited a case and we know of no case that addresses a change in circumstances, where a second application claiming acquired distinctiveness is made for the same term for identical and legally-identical goods four months after a successful opposition to a first application, and which term has registered under a claim of acquired distinctiveness in the second application.

Prior decisions have found a change in circumstance when a second showing of acquired distinctiveness is made many years after the initial failed showing. *See*

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 21 USPQ2d 1641, 1646 (5th Cir. 1992) (factual changes found when second proceeding was 65 years later, and after proliferation of defendant's stores throughout the country); *Flowers Indus.*, 5 USPQ2d at 1589-90 (involving HONEY WHEAT for bread, the applicant had used the designation sought to be registered for more than 50 years at the time of the second proceeding, whereas 40 years earlier, in the prior proceeding, there was use of the term for approximately ten years); *In re Honeywell*, 8 USPQ at 1602 (change of conditions in the marketplace 17 years since the record of the original application closed and since applicant's design patent on the configuration expired.).

These cases are contrasted with *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 116 USPQ2d 1234, 1242 (5th Cir. 2015), in which the Fifth Circuit rejected an argument that circumstances had changed 13 years after an initial decision finding no acquired distinctiveness. The court found that there was insufficient evidence to prove a significant factual change by achieving a secondary meaning in the designation on a nationwide basis for all test preparation courses even though annual revenues increased from just over $3 million in 2001 to an average of $14 million between 2008 and 2010; advertising expanded; media exposure was extensive; a new survey showed 58.1 percent awareness of the term TESTMASTERS; and growth of the internet and customer confusion had "become epidemic." *Id*. The Fifth Circuit stated that "[a] 'significant intervening factual change' must be shown [and] [e]vidence of increased business success alone is insufficient to show a significant intervening change." *Id*. at 1242. Instead, "'a change in the minds of the

public … such that they could immediately associate the 'TESTMASTERS' mark with his [business]'" must be shown and plaintiff "has not shown any special circumstances warranting re-litigation." *Id*.

As mentioned, when considering the issue of acquired distinctiveness, we must consider factors such as the length, degree, and exclusivity of use; amount and manner of advertising; amount of sales and number of customers; and unsolicited media coverage of the product embodying the mark. *Virtual Indep. Paralegals*, 2019 USPQ2d at 11. We must keep in mind as well that acquired distinctiveness may be determined at the time of registration or trial in the cancellation. *See Alcatraz Media*, 107 USPQ2d at 1765; *Neapco*, 12 USPQ2d at 1747; *Kasco Corp. v. S. Saw Serv. Inc.*, 27 USPQ2d 1501, 1506 n.7 (TTAB 1993).

The following are facts and evidence in the cancellation that were not present in the Prior Opposition:

> ● The mark subsequently was registered, and registrations are entitled to a presumption of validity pursuant to Section 7(b) of the Trademark Act.
>
> ● The second application for the registered mark includes a Section 2(f) declaration which attests to Respondent's substantially exclusive and continuous use of its mark for a period of at least five years; there was no assertion of substantially exclusive use in the prior proceeding.
>
> ● Respondent's mark has been in use seven years longer at the time of trial in the cancellation than at the time of trial in the Prior Opposition.
>
> ● Respondent's sales have increased; from December 6, 2001 through November 21, 2011, Respondent sold approximately 15,000 candles for approximately $384,000 (or approximately 1,500 candles per year for $38,400 per year) (¶ 6), and Mr. Hendricks testified, "[e]ach year from

2012 to the present, our annual sales of candles with the Mark has exceeded 15,000 units (the total amount sold from 2001 to 2011) [and] I estimate that our business sold 18,765 units in 2012; 24,875 units in 2013; and 30,270 units in 2014. From 2015 to the present, I estimate that our business has sold an additional 324,318 units."[71]

● Respondent has received additional press coverage referencing the LAGUNA CANDLES mark in publications such as the Los Angeles Times Daily Pilot, New York Magazine, Allure, Cosmopolitan, Elle and Women's Health.

These facts and evidence – notably the increased sales after trial in the Prior Opposition – establish a recognizable change of circumstances from the time of trial in the Prior Opposition and the time of trial in the cancellation. The third *Jet* factor is not satisfied.

### 4. Conclusion on Claim Preclusion.

We conclude that the doctrine of claim preclusion does not apply to Petitioner's claim of geographic descriptiveness with no acquired distinctiveness. Petitioner's res judicata claim is denied.

## VI. Fraud

In conjunction with its claim of fraud, Petitioner claims that Respondent represented to the USPTO that its mark was entitled to registration under Section 2(f) in the application which matured into the involved registration, when just four months earlier, the Board decided that the mark was primarily geographically descriptive and had not acquired distinctiveness.[72]

---

[71] Hendricks Decl. ¶ 8, 21 TTABVUE 4.

[72] 30 TTABVUE 15-16.

"Fraud in procuring a trademark registration occurs when an applicant for registration knowingly makes a false, material representation of fact in connection with an application to register with the intent of obtaining a registration to which it is otherwise not entitled." *Luxco,* 121 USPQ2d at 1501 (citing *In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938, 1941 (Fed. Cir. 2009)). A party alleging fraud in the procurement of a registration bears the heavy burden of proving fraud with clear and convincing evidence. *Id.*; *Nationstar Mortg. LLC v. Ahmad*, 112 USPQ2d 1361, 1365 (TTAB 2014). "There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *In re Bose*, 91 USPQ2d at 1939 (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (TTAB 1981)). To carry this burden, the party alleging fraud must prove that:

> (1) the applicant made a false representation to the USPTO;
>
> (2) the false representation was material to the registrability of the mark;
>
> (3) the applicant had knowledge of the falsity of the representation; and
>
> (4) the applicant made the representation with intent to deceive the USPTO.

*See In re Bose*, 91 USPQ2d at 1941.

Petitioner's claim of fraud rests on an allegedly false representation by Respondent that it was entitled to seek and obtain registration of its mark when it knew that the Board had already ruled that the same mark was not registerable. The Examining Attorney assigned to the application which registered included a "Note to the File" which states, "the Applicant is under common ownership with Ser. No.

85/137006 [*i.e.*, the Prior Application] per attorney Amy Burke."[73] Applicant's attorney informed the Examining Attorney about the Prior Application, and the Examining Attorney presumably was, or should have been, aware of the Board's opposition decision. Thus, to the extent the Section 2(f) claim differed from the Board's determination in the Prior Opposition, this was not material to the registrability of the mark. *See, e.g.*, *Lesley Hornby a/k/a Lesley Lawson a/k/a Twiggy v. TJX Cos.*, 87 USPQ2d 1411 (TTAB 2008) ("The Examining Attorney was well aware that 'Twiggy' was the name of a British actress and personality, also referred to by the Examining Attorney in the June 19, 1998 Office action as 'a well known former supermodel who also sings and acts.' In view thereof, respondent's failure to identify petitioner when it signed the declaration in its application can hardly be considered material to the Examining Attorney's decision to allow the application.").

We also address Petitioner's argument that Respondent had the requisite intent to deceive the USPTO.[74] Subjective intent to deceive, however difficult it may be to prove, is an indispensable element in the analysis. Of course, "because direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent

---

[73] June 3, 2014 "Note to File," TSDR 1. TSDR refers to the downloadable .pdf version of the USPTO's Trademark Status & Document Retrieval (TSDR) system.

[74] 30 TTABVUE 16.

requirement." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 [88 USPQ2d 1001] (Fed. Cir. 2008).

Petitioner argues that "[t]he only possible conclusion … is that such representation was intentionally false given the Board's decision only four months earlier";[75] and that "the false statements were not accidental but were made with an intent to deceive the [USPTO] given that they were made four months after the Board's finding of lack of acquired distinctiveness."[76] Respondent notes that "Petitioner does not identify a scintilla of evidence regarding Registrant's intent,"[77]

---

[75] *Id.*

[76] *Id.*, 30 TTABVUE 17. *See also* Petitioner's Resp. to Interrog. No. 10 (23 TTABVUE 90), stating:

> Registrant knew that (1) the Subject Mark was primarily geographically descriptive; (2) the Subject Mark had not acquired distinctiveness or secondary meaning; (3) the Subject Mark was not entitled to registration; (4) Registrant was not entitled to seek or obtain registration of the Subject Mark; and (5) the Board already had found the Subject Mark was primarily geographically descriptive and the applicant for the Prior Registration was unable to prove acquired distinctiveness or secondary meaning.
>
> Despite knowing these facts, Registrant filed the application that resulted in the Subject Registration and represented to the Trademark Office that it was entitled to seek and obtain registration of the Subject Mark. Registrant knew when it filed such application that the Board already had ruled that the Subject Mark was not subject to registration because it was primarily geographically descriptive and Registrant therefore knew that it was not entitled to seek or obtain registration of the Subject Mark.

[77] 31 TTABVUE 11.

and argues that Petitioner is simply drawing a conclusion from the circumstances surrounding the filing of the application.[78]

While intent to deceive can be inferred from indirect and circumstantial evidence, such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement. *Bose*, 91 USPQ2d 1941. We find that there is insufficient evidence in the record before us to warrant the inference of an intent to deceive the USPTO. Respondent disclosed the prior application to the Examining Attorney, suggesting that Respondent was not deliberately concealing the Prior Opposition. Also, Respondent may have believed that the change of circumstances discussed above permitted a second application. *Cf. Nationstar Mortg. LLC v. Ahmad*, 112 USPQ2d 1361 (TTAB 2014) (Board able to infer deceptive intent to deceive USPTO based on applicant's testimony coupled with other factual findings). "[A]bsent the requisite intent to mislead the PTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation." *Bose*, 91 USPQ2d at 1940 (citing *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 212 USPQ 801 (CCPA 1981)).

In view of the foregoing, Petitioner's claim of fraud is denied.

## VII.    Laches

Because we have denied each of Petitioner's claims, we need not reach Respondent's affirmative defense of laches.

**Decision:** The Petition to Cancel is denied.

---

[78] *Id.*